### IN THE

# COURT OF APPEALS

### OF

# MARYLAND.

---

June Term, 1843.

THE STATE USE OF URATH STEVENSON *vs.* PHILIP REIGART.
*June* 1843.

A testator devised a sum of money to his two grand-daughters, as and for their absolute property, to be taken and set apart for that purpose, out of his personal estate, and paid them as soon as conveniently may be done after his decease; the same to be understood as bequeathed unto them as their property respectively, and not to either of their respective husbands or their father, nor their step-brothers or step-sisters. The sum devised to one of the females, was demanded by her husband from the executors, and paid over to him by them upon a special agreement. In an action brought by the legatee against the administrators of her deceased husband to recover the money received by him, HELD: that it was not material whether the will gave her an absolute or a separate estate, and that her rights must depend upon the validity or invalidity of the agreement, in virtue of which the money was paid over to her deceased husband.

A contract founded upon an equitable duty, such as would be enforced by a court of equity, or upon a moral obligation, which no court of law or equity can enforce, or to do that which an honest man ought to do, or upon the waiver of a legal right by the party entitled to it, is maintained by a sufficient consideration.

The executors in this case held the wife's legacy as trustees; and wherever it is necessary for a husband to resort to a court of equity to get possession of his wife's legacy, that court will require him to do equity by making a settlement upon his wife and children, before it will lend him its aid in the

1    v. 1

State, use of Stevenson, *vs.* Reigart.—1843.

recovery of it; and a promise by the husband to the executors to do that which equity would do in this case, is founded upon a sufficient consideration.

Where the husband receives the money of his wife, not in virtue of his marital rights so as to amount to a reduction into possession, but as her trustee and for her benefit, on the death of the husband it continues to be her property, for which she has a claim against his estate, and does not go to his personal representatives.

The agreement being valid and obligatory upon the husband, is to be considered as a substitution for the equity of the wife, which operated for the benefit of the wife and children, though not named, which a court of equity would specifically execute against the husband upon a bill filed for that purpose.

It has been settled by this court, that the wife's equity will prevail against an assignment of the husband for valuable consideration, or in payment of a just debt.

Where the husband receives his wife's legacy from the executors of a testator, making her a bequest, and promises to invest the money for her, does not invest according to the terms and conditions under which he received the legacy, and dies, his widow has a right to elect to consider him her debtor to the amount of it, as so much money had and received to her use.

Where the merits of an action at law depended in every aspect of it, upon the true construction of an agreement, every prayer which went to the right of action, and kept out of view the effect of the agreement, and so did not involve the true point of controversy between the parties, is considered as wholly abstract.

A court is not to be called upon to settle legal principles which have no relevancy to the case before them.

Where the orphans court, upon the application of a creditor of a deceased person, and the exhibition of the proof of his demand, passes a claim to be allowed, if paid by the executor or administrator, and upon appeal that order is reversed, such reversal constitutes no bar to the recovery of the same claim at law. The orphans court possessed only a prima facia jurisdiction, and the exercise of the appellate jurisdiction did not increase its effect.

An executor may interpose to protect the wife's equity in property under his control.

Ignorance of the law cannot be made available where there is a full knowledge of all the facts.

The case of *Bowley and Lammot*, 6 H. & J. 524, was held an exception to the general rule; for there a *forfeiture of title* would have been incurred, if the general rule, that a knowledge of the law in civil cases shall be presumed, where there is a full knowledge of the facts, had been permitted to operate; that was an attempt to charge the party with a fraudulent concealment of title in the absence of actual knowledge, upon the legal presumption which imputed knowledge.

An executor or administrator may retain the amount of a debt due him by his

State, use of Stevenson, *vs*. Reigart.—1843.

deceased testator or intestate, out of his estate, or its due proportion of assets, without passing his claim before the orphans court.

The act of limitations does not apply to the claim of an executor against his testator, who retained for his debt. He could institute no suit at law against himself.

APPEAL from *Baltimore* county court.

This was an action of DEBT, commenced on the 12th October 1837, by the appellant against the appellee and *Oliver Holmes.*

The plaintiff below declared on the bond of *Elizabeth L· Stevenson, Philip Reigart, H. Niles and Oliver Holmes*, dated 17th March 1832, for $25,000, conditioned, that if the above bounden *E. L. S.* and *P. R.* should well and truly perform the office of administrator of *Josias Stevenson, junior,* late of *Baltimore* county, deceased, according to law, &c., then to be void.

The breach assigned was, that *Urath Stevenson*, executrix of *Josias Stevenson*, recovered a judgment in *Baltimore* county court against *E. L. S.* and *P. R.*, as administrators of *J. S., junior*, deceased, for as well the sum of $1,000, as, &c., which was still unpaid, though the administrators had assets to satisfy the same. Writ of *fi. fa.* returned *nulla bona,* &c.

The defendants appeared and pleaded general performance, with an agreement, that the defendants should, under the plea of performance, be at liberty to give in evidence insufficiency of assets and any other matters that could be given in evidence under any plea to the merits. Seven days notice before the time of trial of such other matters being first given to plaintiff's attorney. All errors in pleading on both sides waived.

It was also agreed, that if the jury reject the claim of ELIZABETH SCHRIVER, they shall find a general verdict for the plaintiff for the amount of the judgment offered in this case. If they find in favor of the said claim, they shall find a verdict for the plaintiff for $400. If the jury find in favor of *E. S. Schriver's* claim, its assets shall be marshalled, and the amount of them, as well as the amount of the debt, ascertained by *John Glenn* and *David Stewart, esquires*, and the judgment to be released on payment of such sum as they shall ascertain to be due.

If the jury find the claim of *E. L. S.*, a like marshalling of assets shall be made by *J. G.* and *D. S.*, *Esq'rs*, and judgment to be released upon payment of the amount ascertained by them.

In all other suits upon the administration bond like judgments to be entered, a like marshalling of assets to be made by *J. G.* and *D. S.*, and like releases to be entered upon their amount. Nothing herein to prevent the plaintiff from appealing.

A commission to take proof was issued by consent to *Lancaster*.

It was then admitted that *Oliver Holmes* had died since his appearance; that *Josias Stevenson, junior*, died, and letters on his estate were issued to *E. L. S.* and *P. R.* in 1832, and that *J. S., Jr.*, and *Elizabeth Reigart* were married in 1827.

The jury found a verdict for the plaintiff, and assessed her damages at $400.

At the trial of this cause, the plaintiff offered in evidence to the jury, the following judgment, *fieri facias* and return of said *fieri facias*, to wit:

URATH STEVENSON *vs.* PHILIP REIGART AND ELIZABETH STEVENSON, administrators of Josias Stevenson, Jr. In *Baltimore* County Court, January term 1837. Case. 23rd March 1837, judgment by confession for $800 damages in the nar, and costs of suit; the damages to be released on payment of $350, with interest from the 2nd day of July, 1832, and costs. To bind assets. Plaintiff's costs $9.73⅔. 24th April 1837, *fi. fa.* issued to May term 1837. Returned *nulla bona*.

Test:        THOS. KELL, *Cl'k Balto. Co'ty Court*.

The plaintiff also proved that administration upon the estate of the said *Josias Stevenson, junior*, had been duly committed to *Elizabeth L. Stevenson*, his widow, and to the defendant, on the —— day of ——, in the year 1832, and that assets came to their hands, but not to an amount sufficient to pay all claims against said estate.

The defendant then offered in evidence to the jury an admitted copy of the last will and testament of *Dr. Albert Dufresne*, who departed this life some time in the year 1823, and that his said will was duly proved, and that letters testamentary

were duly granted on the 13th day of August, 1823, to *Dr. Samuel Dufresne* and *Peter Reed*, two of the executors therein named; that *Maria Reigart*, one of the legatees therein named, afterwards departed this life, in her minority, without leaving any child, and without ever having been married, leaving her sister *Elizabeth L. Reigart*, (named in said testament and last will,) surviving her; that the said *Elizabeth L. Reigart* afterwards, to wit, on the 27th day of March, 1827, intermarried with the said *Josias Stevenson, junior*. The defendant further proved by *F. Slower*, a competent witness, that he was acquainted with the said *Josias Stevenson, junior*, in his life time, and with the said *Elizabeth L. Stevenson*, his wife, formerly *Elizabeth L. Reigart*, and that she is his niece; that some time in the year 1829, the said *Stevenson* and his wife were at the house of the witness in *Philadelphia*, and the said *Stevenson* then said that he wanted his wife's legacy, but that he did not like to go to *Lancaster* to get it; the reason why he wanted it was, that he could invest it in *Baltimore;* that it was his intention to invest it in *Baltimore* for his wife's exclusive use; that he wanted to protect the money for his wife. Witness told him that he considered it proper that he should do so, as the executors were trustees of this fund, and it was the evident intention of the grand-father to secure it for the benefit of his grand-daughters. He said he could invest it to more advantage in *Baltimore*, where it would yield eight or ten per cent.; and he frequently repeated, in the course of the conversation, that he intended to settle the money on his wife, and for her exclusive use. *Mrs. Stevenson* was present during the conversation. *Stevenson* told witness that the executors wanted security, and he spoke of *Mr. Reigart*, his father-in-law, as the chief obstacle to his getting the legacy, and he expressed a great deal of surprise at the conduct of the executors, as he did not want the money for himself, but to invest it in *Baltimore*, where it would yield more and be less troublesome to him. Witness thinks that he saw *Stevenson* afterwards, and *Stevenson* told him that he had bought a house in *Baltimore*, near the Circus, in the name and for the benefit of his wife. The defendant also proved

by *Judge Dale*, a competent witness, that some time in the fall of 1828, *Stevenson* came to *Lancaster* for his wife's legacy. Said *Stevenson*, and *Dr. Samuel Dufresne*, one of the executors of *Dr. Albert Dufresne*, came together to his office, and spoke to witness about it. *Dr. Samuel Dufresne* made two objections to paying over the money; the *first* was that *Mrs. Stevenson* was yet in her minority, and that the property was hers, and that her husband could not execute a valid release to the executors; the *second* was, that he himself was entitled to it on the contingency that she died without issue; but he said that he would waive both objections if *Stevenson* would invest the property for *Mrs. Stevenson's* use. Witness suggested a conveyance by *Dr. Dufresne* to *Mrs. Stevenson*, of real estate in *Lancaster*, but *Stevenson* said that he did not want real estate in *Lancaster;* that he would rather have it in money, and said that he could invest it to more advantage in *Baltimore*. Eventually, they partly came to the conclusion that one-half should be paid in real estate, and the other half in money. Witness remarked to *Stevenson*, that if he received one-half in cash, it would be a very pretty beginning, but he said that he did not want any of it for himself; that he was in business already. They finally came to this agrement, that one-half, consisting of real estate in *Lancaster*, should be transferred in trust, for the use of *Mrs. Stevenson*, and that the other half should be given to *Stevenson*, and that he should invest it for the use of his wife, in real estate in *Baltimore*. Witness told him it would be his interest, as it was his duty, to invest it for his wife, and he said it was what he wished, and what he intended to do. *Stevenson* at all times repeated that he did not want the money for his business, but to invest it in real property for his wife. He came again to *Lancaster* in the spring of 1829, and he said that he had obtained the opinion of two of the ablest lawyers in *Baltimore*, that he was entitled to the legacies. Witness looked at the opinion, and read it over. Witness then told *Mr. Stevenson*, that by the laws of *Pennsylvania*, no person who was an executor, was required to pay over money, without a refunding bond and security. Witness

referred him to the act of *Pennsylvania*, of 21st March 1772, entitled "An act for the most easy recovery of legacies," and read it to him from the book of laws, and at said *Stevenson's* request, witness lent him the book, which he carried to the office of his counsel in *Lancaster*. He returned and said that he could not give the required security in *Pennsylvania*, but could do so in *Maryland*. Shortly after this, *Dr. Samuel Dufresne* came over to my office and said that *Stevenson* was pressing him for the money, and that he would do almost any thing to get rid of the matter. Witness then went up to see *Mr. Reed*, the other executor, and told him that he thought *Dr. Dufresne* would give way, and *Reed* said, "zounds! the money shan't go out of my hands that way." During all this time, *Stevenson* said that he only wanted the money where it would be under his own eye, and of no more use to him. *Reed* came down to my office. It was finally agreed amongst them, that *Dr. Samuel Dufresne* should convey certain parcels of property in *Lancaster*, valued at $9,000, to *Mrs. Stevenson*, for her use, and her use alone, and that the balance of the money, being $10,520, or thereabouts, including the interest, should be paid to said *Stevenson*, to be by him invested in real property in *Baltimore*, for the use of his wife. Witness did not see the money paid, nor was he present when it was paid, but he prepared a release to the executors, which was executed both by *Mr.* and *Mrs. Stevenson*, and left in my hands, upon the understanding that it should be delivered over to the executors, upon the execution and delivery of the deed, for the real property in *Lancaster*. The reason why the deed was not executed and delivered at the time was, that *Mrs. Stevenson* made some objection to *Mr. Reigart*, as trustee, and said that it should remain until they returned to *Baltimore*, and that if they should make an arrangement, that some other person was to be inserted as trustee in the deed, and if not, then the deed was to be executed and delivered for the property, with *Mr. Reigart's* name as trustee. The deed was executed and delivered on the 22nd July 1829.

The defendants then offered in evidence the said deed, which is as follows, to wit:

It is agreed that the appellee may, at the argument of this case in the Court of Appeals, read as a part of the record in the above case, a copy of the deed of trust from *Dufresne* and others to *Philip Reigart;* and that an argreement, if any further one be necessary, will be signed on the part of the appellants, to annex the same to the record, as a part of the bill of exceptions in which it is called for. It is further agreed, that the record shall be made out and sent up, without the actual introduction of said deed as a part of the evidence, a reference being made for its insertion in the place where it ought to be introduced.

The defendant further proved by said *Judge Dale*, that he considered the said deed as a literal execution of the agreement. The said witness on his cross examination further stated, that the release was executed in the month of May 1829, and that said *Dr. Samuel Dufresne* is dead, and that he died about ten years since. The defendant further proved by *Franklin Reigart*, a competent witness, that on the very day on which, as he understood, the money was paid, and before the money was paid, there was some conversation at the dinner table between *Stevenson* and the father of the witness, in relation to said legacies. *Stevenson* said that he had a great deal of trouble with the executors, and he complained that they demanded a bond with securities in *Lancaster*. The father of witness then told *Stevenson* that he could easily get rid of the difficulty, if he would do what he ought to do. *Stevenson* said that he had promised the executors to invest it in property in *Baltimore*, in his wife's name, and that he intended to invest it in *Baltimore* in her name, and that would clear the executors, but they still demanded security. Witness went after dinner on that day with *Stevenson*, to see *Schaum*, whom *Stevenson* asked to be his security, but *Mr. Schaum* declined to be so, upon which *Stevenson* said to him, that he, *Schaum*, would run no risk, as he *Stevenson* had promised the executors that if they would pay him the money he would buy property in *Baltimore* for the

use of his wife. *Stevenson* contended in conversation with the father of witness, that he was not bound to take any real property, and his father told *Stevenson* that the executors only required him to conform with the will, and that by the will the legacy was given, so that neither the father nor the husbands of the grand-daughters could touch it. They both were a little warm on the subject. Witness says that sometime in 1830, he was in *Baltimore*, and *Stevenson* there took him to a piece of property near the Circus, where repairs were being made, and told him that that was the property he had purchased. The defendant was proved by *Peter Reed*, a competent witness, that he was one of the executors of *Dr. Albert Dufresne*. Witness knew *Mr. Stevenson* after his marriage, and says he had cause to know him, as he troubled him very much about the legacy. They tormented *Dr. Dufresne*, the other executor, almost to death, he was sickly and crabbed; but witness stuck out, and told *Stevenson* that he would not pay him unless the law required it. Witness asked *Stevenson* why he did not do as the will required. Witness told him that he should not have the money unless he acted according to the will. *Stevenson* tried to get security, but could not. He said he would buy property in *Baltimore*. Witness told him that the will called for the money to go to the separate use of the girl, and the bond required was a bond to secure it to her separate use. Witness being cross examined stated, that the bond required by the executors, was a bond according to the act which *Judge Dale*, at the time of this conversation, read to *Stevenson* from the book. At the time of this conversation witness says, that one legacy had been paid to *Stevenson* in cash, and it was only about the other legacy that there was any dispute.

The plaintiff then further to maintain the issue on its part joined, proved by competent testimony that the said *Josias Stevenson* and the said *Elizabeth L. Reigart* were married on the 27th day of March, 1827. The plaintiff also offered in evidence the following depositions taken in a former suit, and

State, use of Stevenson, *vs.* Reigart.—1843.

to be received in this suit as evidence under the agreement which follows the said depositions:

MARYLAND, SCT: *The State of Maryland to William Frick, John Mathiot, Edward Purcell and John R. Findlay, of Lancaster, State of Pennsylvania, greeting:* Know that we have appointed you or any three or two of you, to be our commissioners to examine evidences, &c. Witness the honorable THEODORICK BLAND, Chancellor, this 2nd day of September, Anno Domini 1833. RAMSAY WATERS, Reg. Cur. Can.

Commissioners' oath, &c.

Depositions of witnesses produced, sworn or affirmed, and examined on the 15th February 1834, at, &c., by virtue of a commission, &c.

*Dr. Samuel Dufresne,* of, &c. deposeth as follows:

1. Do you know the complainant, and did you know *Josias Stevenson, junior,* late of *Baltimore* city, deceased, in his life time?

To the said first interrogatory he deposeth as follows: I do not know *Henry Stevenson,* the complainant, but I do know *Elizabeth L. Stevenson* and *Philip Reigart,* and I did know *Josias Stevenson, junior,* late of the city of *Baltimore,* deceased, in his life time.

2. Have you any knowledge of a legacy bequeathed to the said *Elizabeth L. Stevenson,* by her grandfather *Albert Dufresne,* of the city of *Lancaster,* in the State of *Pennsylvania?* If so, please state the amount thereof, and the circumstances by which the said legacy was attended, as regards the payment of it over, and annex to your answer an examined and authenticated copy of the last will and testament of the said *Albert Dufresne,* whereby said legacy was bestowed.

To the second interrogatory he deposeth as follows: By will, *Dr. Albert Dufresne,* late of, &c., deceased, dated the 8th of December, A. D. 1820, and duly proved on the 13th day of *August, A. D.* 1823, and letters testamentary thereupon issued to this affirmant and *Peter Reed,* two of the executors named in said will, the following bequest, amongst others, was made by the said testator in his said last will and testament.

*2nd Item.* I do give and bequeath unto my two grand-daughters, *Elizabeth Reigart* and *Maria Reigart*, the children of my late dearly beloved daughter, *Albertina Reigart*, deceased, late *Albertina Dufresne*, the sum of eighteen thousand dollars, that is to say, the sum of nine thousand dollars to each of my said grand-daughters, as and for their absolute property, which said sum is to be taken and set apart for that purpose, out of my personal estate, by the executors of this my last will and testament, and the guardians of my said grand-daughters here-inafter named and appointed as soon as conveniently may be done after my decease, subject nevertheless, to the restrictions and limitations hereinafter mentioned and expressed.

*3rd Item.* It is my will, and I do order and direct, that the aforesaid legacy or sum of eighteen thousand dollars, shall be understood and deemed as given and bequeathed unto them as their property respectively, and not either to their respective husbands, or to their father, *Philip Reigart*, nor their step-brothers, or step-sisters, in case they or either of my said grand-daughters, *Elizabeth* or *Maria*, should happen to die without leaving any child or children, and if either of them, the said *Elizabeth or Maria*, should die without leaving any child or children, then the whole of the said legacy, or sum, shall descend, come and belong, and I do hereby give and bequeath the same unto the survivor of them. But in case they should both die, without leaving any child or children, then and in such case I do give and bequeath the whole and every part of the said legacy or sum of eighteen thousand dollars unto my son *Samuel Dufresne*, or his legal heirs and representatives.

The amount of the legacies under said will to each of the grand-daughters of said testator, as directed in said item of the will herein before particularly referred to by affirmant, was nine thousand dollars. *Josias Stevenson junior, was here several times for the amount of the legacy claimed by him in the years* 1828 *and* 1829. On the 25th of May 1829, he, *Josias Stevenson junior*, obtained in money and property from the affirm-ant and *Peter Reed*, executors of the last will and testament of said *Dr. Albert Dufrense*, deceased, and from them as

guardians of the said *Elizabeth* and *Maria*, the two grand-daughters mentioned in the item of the will herein before recited, *the sum of nineteen thousand five hundred and twenty-six dollars and eight cents, in the manner hereinafter mentioned; the sum of nine thousand dollars, and the interest thereon was paid to the said Josias Stevenson, junior, in cash,* and the residue of the whole amount was paid by conveyance of real estate in the city of *Lancaster,* by deeds of trust, by which the property was to be held for the use of the said *Elizabeth L. Stevenson.* This real estate consists of three parcels, to wit, &c.

The exact amount of cash paid to the said *Josias Stevenson, junior,* the affirmant does not recollect; affirmant has not a distinct recollection of every circumstance connected with the payment of the legacy; affirmant recollects that *Josias Stevenson, junior,* could not get the sureties required by the act of Assembly, requiring sureties to be given to the executors as aforesaid; affirmant expressed his anxiety to *Josias Stevenson, junior,* about securing the property to the said *Elizabeth L. Stevenson; affirmant has no recollection of any promise made to him, that the money should be invested for her use, although he understood that such a promise had been made.* He spoke to this affirmant, making known *his intention to purchase some property in Baltimore.* I think it was property near the Circus that he spoke of. The time of this conversation affirmant does not exactly recollect. The exemplification of the will of *Dr. Albert Dufresne,* deceased, being endorsed, complainant's exhibit A, I have carefully examined, with the original will now in the Register's offce in the city of *Lancaster,* and find the same exemplification to be a correct, accurate and literal copy of said original will.

3. Have you any knowledge of the payment over of said legacy; to whom made, and under what circumstances? If so, detail the same, fully and minutely, and state the time thereof.

To said third interrogatory deposeth as follows: affirmant states that he has not a full recollection of all the circumstances connected with the payment of the legacy to *Josias Stevenson, junior,* but that as far as his knowledge and recollection ex-

tended, he has detailed the same in his answer to the second interrogatory.

4. Do you know whether or not, previously to said payment, or at the time thereof, the said *Josias Stevenson, junior*, on his part, expressly undertook and agreed to invest the amount of the said legacy in some property for the sole and separate use of the said *Elizabeth L. Stevenson;* and whether or not the said payment was not made to him upon his said undertaking and agreement, and at his solicitation? State all your knowledge of the matters enquired of, fully and in detail.

To the said fourth interrogatory he deposeth as follows: affirmant states that he has no other knowledge of any undertaking or agreement of the said *Josias Stevenson, junior*, or any other circumstances connected with the payment of the legacy to him, other than that detailed in answer to the second interrogatory; said *Josias Stevenson, junior*, did *repeatedly* solicit the payment of the legacy, and *the delay arose from the anxiety of the executors and guardians to secure the interest* of *Elizabeth L. Stevenson;* the legacy when paid as aforesaid, was paid by her consent; affirmant has not distinct recollection of any other matters enquired of in this interrogatory, than such as he has detailed in his answer to the second interrogatory, and in his answer given to this interrogatory.

*Benjamin Schaum*, of the city of *Lancaster*, gentleman, aged twenty-seven years, or thereabouts, being produced, sworn and examined on behalf of the defendants, deposeth, as follows:

1. Same as before.

To said first interrogatory he deposeth as follows: I do not know *Henry Stevenson*, the complainant, but I do know *Elizabeth L. Stevenson* and *Philip Reigart*, and did know *Josias Stevenson, junior*, late of the city of *Baltimore*, deceased, in his life time.

2. Same as before.

To said second interrogatory he deposeth as follows: Deponent has no other knowledge of the legacy bequeathed to *Elizabeth L. Stevenson*, by her grand-father *Dr. Albert Dufresne*, late of the city of *Lancaster*, deceased, nor the amount

thereof, nor any of the circumstances connected with its being paid over, except that *Josias Stevenson, junior,* called upon him in the city of *Lancaster,* to become one of his sureties in a refunding bond that he wished to give the executors of *Albert Dufresne,* deceased, for the purpose of enabling him to receive the legacy enquired of in this interrogatory. This deponent declined becoming his surety; that he wished him to get some other person; that he did not wish to have any thing to do with it. The exemplification of the will of *Dr. Albert Dufresne,* deceased, being endorsed complainant's exhibit A, I have carefully examined, with the original will now in the Register's office in the city of *Lancaster,* and find the same exemplification to be a correct, accurate and literal copy of said original will.

3. Same as before.

To said third interrogatory he deposeth as follows: Deponent says that he has stated in his answer to the second interrogatory all his knowledge in reference to said legacy, and that he has no knowledge of any other circumstances, except such as are detailed in his answer to the second interrogatory.

4. Same as before.

To said fourth interrogatory he deposeth as follows: Deponent states that he has no knowledge of any of the matters enquired of in this interrogatory, having detailed in his answer to the second interrogatory every circumstance of which he has any knowledge or recollection.

WILLIAM WHITESIDE, Esquire, Register of the county of *Lancaster,* aged thirty-nine years, or thereabouts, being produced, sworn and examined on behalf of the defendants, deposeth as follows:

1. Same as before.

To said first interrogatory he deposeth as follows: Deponent says that he neither knows the complainant nor respondents, nor did he know *Josias Stevenson, junior,* in his life time.

2. Same as before.

To said second interrogatory he deposeth as follows: Deponent has no knowledge of the legacy bequeathed to *Elizabeth*

*L. Stevenson,* by her grand-father *Albert Dufresne,* deceased, or the amount thereof, nor the circumstances by which the said legacy was attended as regards the payment of it over, nor any other of the circumstances connected with the same, except so far as deponent is informed by the exemplified copy of the will of the said *Dr. Albert Dufresne,* deceased, being endorsed complainant's exhibit A. Deponent is the Register of Wills of the county of *Lancaster,* and he has carefully compared and examined the exemplified copy, endorsed as aforesaid, with the original will of the said *Dr. Albert Dufresne,* deceased, now on file in his office, and he finds upon such examination and comparison, that the same is a true, accurate and literal copy of the said original will, on file as aforesaid.

3. Same as before.

To said third interrogatory he deposes as follows: Deponent says that he has stated in his answer to the second interrogatory all his knowledge in reference to said legacy, and that he has no knowledge of any other circumstances, except such as are detailed in his answer to the second interrogatory.

4. Same as before.

To said fourth interrogatory he deposeth as follows: Deponent states that he has no knowledge of any of the matters enquired of in this interrogatory, having detailed in his answer to the second interrogatory every circumstance of which he has any knowledge or recollection.

*Samuel Dale,* of, &c., deposeth as follows:

1. Same as before.

To said first interrogatory he deposeth as follows: I do not know *Henry Stevenson,* the complainant, but I do know *Elizabeth L. Stevenson* and *Philip Reigart,* the respondents, and I did know *Josias Stevenson, junior,* late of the city of *Baltimore,* deceased, in his life time.

2. Same as before.

To said second interrogatory he deposeth as follows: Deponent says that he has knowledge of the legacy bequeathed to *Elizabeth L. Reigart,* now *Elizabeth L. Stevenson,* by her grandfather *Dr. Albert Dufresne,* late of, &c. Deponent says that

the amount due to *Elizabeth L. Stevenson*, after the death of her sister *Maria*, under the will of her grand-father *Dr. Albert Dufresne*, deceased, was $18,000, and at the time it was settled in 1829, when the executors were released, the legacies, with their interests, were $19,526.08. Deponent says some time in 1828, *Josias Stevenson, junior*, came to the city of *Lancaster*, and demanded the legacy coming to his wife, under the will of her grand-father *Dr. Albert Dufresne*, deceased. *Dr. Samuel Dufresne*, one of the executors, agreed that he would give him the legacy coming to her, although she was under age, if he would take cne-half of it in real property, for her use, and the other half he would pay in cash. Some deeds were drawn by me, and executed by *Dr. Samuel Dufresne* to that effect, and sent on to him. He the said *Josias Stevenson, junior*, some time after, came to *Lancaster*, perhaps in 1829, the time I do not exactly recollect, and said he would be entitled to recover. Deponent says that *Josias Stevenson, junior*, told him he could not obtain that security here, but could do it at home in *Baltimore*, and that he wondered why the executors should ask it of him. Deponent says he replied, that the executors were anxious to have the property secured to *Elizabeth L. Stevenson*. Deponent says that he *Josias Stevenson, junior*, then replied, if he got the cash, he would apply the same in purchasing real property in the city of *Baltimore* for her, *Elizabeth L. Stevenson's* use, and that it could be as well secured there as in the city of *Lancaster* for her. Deponent says that *Josias Stevenson, junior*, remained in the city of *Lancaster* at one time for about three days, during which time he frequently called at my office, and we had frequently conversations to the same effect, as what is detailed above. He *Josias Stevenson, junior*, borrowed the acts of Assembly from me, in relation to the refunding bond; he said he would take them and consult his attorney in the city of *Lancaster*. He the said *Josias Stevenson, junior*, finally agreed to take nearly the one-half in real property in the city of *Lancaster*, transferred for the use of his wife, and the balance in cash; and on the 25th day of May, 1829, he released and discharged the executors and guardians, to wit, *Dr. Samuel*

*Dufresne* and *Peter Reed.* Deponent has no recollection of what took place when the money was paid, nor of any conversation that took place at that time. Deponent has examined the exemplified copy of the will of *Dr. Albert Dufresne,* deceased, being endorsed complainant's exhibit A, and believes it to be a correct copy.

3. Same as before.

To said third interrogatory he deposeth as follows: Deponent states that he has not a full recollection of all the circumstances connected with the payment of the legacy to *Josias Stevenson, junior,* but that so far as his knowledge and recollection extends, he has detailed the same in his answer to the second interrogatory.

4. Same as before.

To said fourth interrogatory he deposeth as follows: Deponent states that he has no other knowledge of any undertaking or agreement of the said *Josias Stevenson, junior,* or any other circumstances connected with the payment of the legacy to him, other than that detailed in answer to the second interrogatory. Said *Josias Stevenson, junior,* did repeatedly solicit the payment of the legacy, and the delay arose from the anxiety of the executors and guardians to secure the interest of *Elizabeth L. Stevenson.* The legacy, when paid as aforesaid, was paid by her consent. Deponent has no distinct recollection of any other matter enquired of in this interrogatory than such as he has detailed in his answer to the second interrogatory, and in his answer given to this interrogatory.

The plaintiff then further proved, that the said *Elizabeth L. Reigart,* after the death of the said *Josias Stevenson, junior,* and after letters of administration had been granted to her and the defendant, *Philip Reigart,* to wit, on the 15th April 1837, presented to the orphans court of *Baltimore* county, a claim against the estate of *Josias Stevenson, junior,* an account of the said sum of money, by him so received, from the executors of the said *Dr. Albert Dufresne,* and for the purpose of showing the proceedings in said orphans court, and the proceedings in the Court of Appeals, upon an appeal prosecuted

from the decision of the said orphans court, in relation to the claim so referred, the plaintiff offered in evidence the following record of a judgment of the Court of Appeals, in a case in which *Henry Stevenson* and others were appellants and *Edward Shriver* and *Elizabeth L. Shriver*, his wife, formerly *Elizabeth L. Stevenson*, were appellees, to wit, which record of the Court of Appeals is sufficiently stated in the opinion of this court, for the purposes of this report.

The plaintiff proved further, that the said *Elizabeth L. Stevenson*, on the —— day of ——, in the year ——, intermarried with the said *Edward Shriver*, and is now his wife.

All the foregoing evidence was received under an agreement of counsel made with the knowledge and assent of the court, that the same should be and was received, subject to all objections as to its admissibility and competency, in like manner as if objection had been or was made to its admissibility, before the same was received, and that any opinion of the court in regard to its competency, might be excepted to in like manner as if such opinions had been expressed upon objections made to the admissibility of the evidence before the same was given.

The defendant thereupon submitted the following prayer, to wit:

If the jury find from the evidence, that it was understood between *Mrs. Stevenson* (now *Mrs. Shriver*,) and her then husband *J. Stevenson, junior*, and *Reed*, one of the executors of *Dr. A. Dufresne*, that if said executor and the other executor and guardian of *Mrs. Stevenson*, or either of them, would pay him over the legacy of $18,000, without requiring of him personal security, that the same would be secured to the separate use of his said wife, that he the said *Stevenson* would invest the same in property in *Baltimore*, for such use; and if they further find, that he promised said parties to make such investment for the consideration aforesaid, and never claimed title to said legacy as of his own absolute property, or denied, but that the same should be held by him for his wife's use; and if they further find, that said *Reed* and *Mrs. Stevenson*, in consideration only of said premises and undertaking of said *J. Steven-*

*son*, did agree and consent, and so inform him the said executor, *Dr. S. Dufresne;* and if they also find, that without advising said wife or said *Reed*, or said *S. Dufresne*, that he did not intend to comply with said promise or undertaking, he said *J. Stevenson* received said legacy of $18,000, in property in *Lancaster*, secured to the use of his said wife, and in money $9,000, and added the balance thereof, or never told them or either of them, that he intended to hold said money in his own right, that then the jury are to allow defendants, *Shriver* and wife, a rateable dividend on the account against the estate of said *J. S. Jr.* out of the assets of said estate, given in evidence in this case; of which opinion the court (PURVIANCE, A. J.) was, and so instructed the jury.

The plaintiff then, upon the evidence stated in the foregoing bill of exceptions, further prayed the court as follows:

1. That according to the true construction of the will of *Dr. Albert Dufresne*, the legacy thereby bequeathed to *Elizabeth Reigart*, and the legacy thereby bequeathed to *Maria Reigart*, and which, upon her death, survived to *Elizabeth*, vested absolutely in her upon her marriage with *Josias Stevenson, junior*.

2. That the said *Josias Stevenson, junior*, by his marriage with the said *Elizabeth Reigart*, was, in virtue of his marital rights, entitled to demand and receive of the executors of *Dr. Albert Dufresne*, the bequests mentioned in the preceding prayer.

3. That the executors of *Dr. Albert Dufresne* had no right to hold or to invest the bequests mentioned in the preceding prayers, to the sole and separate use of the wife of the said *Josias Stevenson, junior*.

4. That the executors of *Dr. Albert Dufresne* could not lawfully require or exact of the said *Josias Stevenson, junior*, after his said marriage, as a condition to the payment over to him of the said bequests mentioned in the preceding prayers, any stipulation, promise or agreement, that he would hold or invest the same for the sole and separate use and benefit of his wife.

5. That such portion of the bequests mentioned in the pre-

ceding prayers as was received by *Josias Stevenson, junior,* after his marriage with the said *Elizabeth L. Reigart,* and during her coverture with him, and in virtue of his marital rights, became his absolute property, and that the claim now preferred against his estate by his widow, for money thus received by him, cannot be supported.

6. That the decree of the Court of Appeals, passed at December term 1837, in the case of *Henry Stevenson* and others against *Edward Shriver* and *Elizabeth Shriver* his wife, is final and conclusive upon the parties to said cause, and that the claim advanced by the said *Edward Shriver* and wife in said cause, is not a lien or charge upon the estate of *Josias Stevenson, junior.*

7. That no agreement made by *Josias Stevenson, junior,* with *Elizabeth L. Stevenson,* his wife, or with any person for her, after his marriage with her, and in consideration thereof, to receive and hold to her separate use, or to receive and invest in property for her separate use, money that belonged to her in her own right, before and at the time of said marriage, and upon which the marital right of the said *Josias* attached by said marriage, was or is binding upon the said *Josias Stevenson, junior,* or his administrators, nor can such contract made as aforesaid be the foundation of any claim on the part of the said *Elizabeth* against the personal estate of the said *Josias,* since his death.

8. If the jury believe that he was bound to invest this property by the will of *A. Dufresne,* made any promise to invest the money received from the executors of *A. Dufresne,* that such promise was made under a mistake of law, and is not binding upon him.

9. If the jury believe that *Josias Stevenson* received of the executors of *A. Dufresne,* the money in question, and applied the same about his ordinary business, with the assent of his wife, and that neither the executors of said *Dufresne,* nor his wife, required its separate investment during his life time, that then the said wife has no claim upon the estate for his money so received and used by said *Stevenson.*

10. That there is no evidence to show a debt due to *Shriver* and wife, or either of them, from the estate of *Josias Stevenson, junior.*

11. That *Edward Shriver* and *Elizabeth L. Shriver* his wife, late *Elizabeth L. Stevenson,* and widow of *Josias Stevenson, junior,* cannot in right of the said *Elizabeth L. Shriver,* the administratrix of said *Josias Stevenson, junior,* retain the amount of the claim produced in evidence in this cause, and sought to be established as a debt due to her from the estate of the said *Josias Stevenson, junior,* or any part thereof, because the same is not passed by the orphans court, and therefore, that the jury in marshalling the assets of the estate of the said *Josias Stevenson, junior,* in this cause, cannot consider or treat the said claim as a debt due from the said estate.

12. That if the jury shall believe that the promise and agreement testified to by *Reed* and *Reigart* was made by the said *Josias Stevenson, junior ;* and shall also believe that the sum of money claimed by *Edward Shriver* and *Elizabeth L. Shriver,* his wife, was not paid to the said *Josias Stevenson, junior,* under said agreement and promise, but if the jury find that a new agreement was made between said *Stevenson* and *Dale,* the attorney and agent of the executors, that said *Stevenson* should receive deeds of real estate in *Lancaster,* investing the half of the money in the hands of said executors in said real estate for the separate use of the wife of said *Stevenson,* and that the remaining half should be paid to him in cash, to be at his own disposal, then no debt was due to *Shriver* and wife for which defendants can claim a deduction in marshalling the assets in this case.

13. That there is no evidence in this case to show that *Josias Stevenson,* either at the time, or after he consented to the investment of a portion of his wife's legacy in real estate in the city of *Lancaster,* for her separate use, promised the executors of *Dr. Albert Dufresne,* or *Samuel Dale,* or his said wife, that he would invest the balance of said legacy upon its being paid to him in property for her use, or that he would in any manner hold it for her use.

14. If the jury find from the evidence, that *Josias Stevenson, junior,* consented that one half, or about half of the legacy given his wife by the will of *Dr. Albert Dufresne,* should be invested in real estate for her sole use, he, the said *Josias,* was under no legal, moral, or equitable obligation, to make any further provision for the sole use of his said wife out of the balance of the said legacy.

15. That if the jury believe from the evidence, that *Josias Stevenson, junior,* gave his consent that one half, or about half of the legacy given his wife by the will of *Dr. Albert Dufresne* should be invested in real estate for her sole and separate use, and if they further believe, that at or after the time of giving such consent, he promised the executors of *Dr. Albert Dufresne,* to invest the balance of said legacy upon its being paid to him in cash for the sole and separate use of his said wife, that such promise was without consideration, and not binding upon him in law.

16. If the jury believe that *Josias Stevenson* made the promise mentioned in the testimony of *Reed* and *Reigart,* to invest the legacies of his wife for her sole use; and if they further believe that such promise was made upon the condition that the whole amount of said legacies should be paid to him; and if they find that this condition was not complied with, but that near half the amount of said legacies was invested by the executors of *Dr. Albert Dufresne* in real estate, and that the balance only was paid to said *Stevenson* in cash, that then the said promise was not binding on him, and no claim founded upon it can be a charge against his estate.

17. If the jury believe from the evidence, that *Mrs. Stevenson* was present with her husband, in *Lancaster,* when he demanded the legacy willed to her by *Dr. Albert Dufresne,* from his executors; and was also present when the portion of said legacy which her said husband received in cash was paid to him, and that she did not demand of him or of the executors, that such portion or any part of it should be invested or held for her sole use, but gave her free consent to the said payment to her said husband without condition or qualification,

then the defendant cannot set up by way of claim on his estate the amount of money so paid him with interest.

18. The plaintiff prays the court to instruct the jury, that if they shall believe from the evidence in the cause that the executors of the said *Dr. Albert Dufresne,* after the intermarriage of the said *Elizabeth L. Reigart* with the said *Josias Stevenson, junior,* and during the life time of the said *Josias Stevenson, junior,* and with the consent of the said *Josias Stevenson, Jr.,* conveyed certain real estate in the city of *Lancaster,* by deeds of trust, for the sole and separate use of the said *Elizabeth L. Stevenson,* to the value of one-half, or about one-half of the said legacies mentioned in the preceding prayers; and at the same time, or about the same time, paid to the said *Josias Stevenson, junior,* in cash, the whole residue of said legacies, in full payment and discharge of the said legacies; and shall further believe from the evidence in the cause, that at the time of such payment, in cash, to the said *Josias Stevenson, junior,* he the said *Josias Stevenson, junior,* as an act contemporaneous with such receipt of the said money, and as part of the *res gestæ,* executed and delivered to the said executors, a receipt, in writing, in nature of a deed of release in respect of such legacies, and that the same deed of release was then and there accepted and received by the said executors; and shall further believe, that no other receipt, release or other instrument of writing whatever, was then, or at any other time, either before or afterwards, executed or signed by the said *Josias Stevenson, junior,* or written by him or by his direction, in respect of the said sum, so by him received, or in respect of his said legacies, then the said deed or release is the best evidence of the capacity in which the said *Josias Stevenson, junior,* received the said amount, and of the trust, if any, on which he received the same, and that parol evidence cannot be received of its contents, without shewing said deed of release to be lost, or otherwise accounting for its non-production.

19. That limitation is a bar to the claim of *Elizabeth Stevenson,* as respects the claim of the plaintiffs in this case.

The court (PURVIANCE, A. J.) refused to grant the said prayers, or any of them, but rejected the same, and each and every of them; to which refusal of the court to grant the said several prayers, and to the refusal of the court in respect of each several prayer, and to grant such several prayer, the plaintiff excepted.

The parties filed the following agreement, to wit:

It is agreed that the record in this case shall be considered as made out in full, although the record does not contain at length the record in the case of *Urath Stevenson* against the *administrator of Josias Stevenson, junior, fi. fa.* thereon, and sheriff's return of *nulla bona;* it being agreed, in order to facilitate the making up of the record, and to save expense, that the short copy should have the same effect in the argument of the case as if the full record had been introduced; the short copy having by agreement been substituted in the place of the record in full. It is also agreed, that in the record of the case of *Henry Stevenson and others, appellants, vs. Edward Shriver and Elizabeth L. his wife, formerly Elizabeth L. Stevenson,* shall be considered as included in the record in this case, without actual insertion; it being agreed that the same may be read in the argument of this case as a part of the record, from the record thereof in the Court of Appeals, or from the printed report thereof.

Both parties appealed to this court.

The cause was argued before BUCHANAN, C. J., STEPHEN, DORSEY, CHAMBERS and SPENCE, J.

By McMAHON, SPEED and R. JOHNSON, for the appellant, plaintiff below, and

By W. SCHLEY for the appellee, defendant below.

STEPHEN, J. delivered the opinion of this court.

The question involved in this case being one of some novelty in point of principle, and the amount of the property de-

pending upon the decision of it being of considerable value,
and therefore materially affecting the interests of the parties
litigant, it has received, as it demanded, the careful and
deliberate consideration of this court. The case has been
ably and ingeniously argued by the counsel engaged for the
respective parties, and much aid has been derived during our
researches, from the light thrown upon it by the discussion at
the bar. Upon the fullest examination we have been able to
bestow upon it, we have come to the conclusion that there is
no error in the decision of the court below, and that the judg-
ment there rendered ought to be affirmed. In deciding upon
the merits of this controversy, we think that the true construc-
tion of the will of the testator in reference to the character of
the legacy given to his grand-daughter, *Mrs. Stevenson*, that
is, whether it was absolute, or for her separate use, is wholly
immaterial and irrelevant, and that the rights of the parties
must depend upon the validity or invalidity of the agreement,
under or in virtue of which it was paid over to her husband.
Under this aspect of the case, many of the prayers made by
the appellants' counsel in the court below, which kept out of
view the operation and effect of that agreement, were wholly
abstract, and did not involve the true point in controversy be-
tween the parties, and therefore received at the hands of the
court that fate, which upon established legal principles, una-
voidably awaited them, it being the undoubted duty of the
court not to wander or suffer themselves to be led into the wide
and extended fields of legal science, for the purpose of solving
or settling legal principles having no relevancy to the case
before them, but to confine themselves to those questions of
law alone, which arise upon the facts and circumstances estab-
lished by the testimony, and which properly belong to the case
before them. The great and leading question therefore in this
case seems to be, whether the agreement made by the husband
of *Mrs. Stevenson* with the executors of her grand-father's will,
if satisfactorily proved to have existed, was founded upon a
sufficient consideration to render it obligatory upon him, so as
upon the non-fulfilment of it on his part, to create the relation

of debtor and creditor between him and his wife. We cannot entertain a doubt of the sufficiency of the consideration to support his promise to the executors, in reliance upon which they paid him the legacy. If it was founded upon an equitable duty, such as would be enforced by a court of equity, that alone seems to be sufficient to give it efficacy, and binding operation, even in a court of law. In *Cowper's Rep.* 290, *Lord Mansfield* says, "where a man is under a moral obligation which no court of law or equity can enforce, and *promises,* the honesty and rectitude of the thing is a consideration. As if a man promises to pay a just debt, the recovery of which is barred by the statute of limitations; or if a man, after he comes of age, promises to pay a meritorious debt, contracted during his minority, but not for necessaries; or if a bankrupt in affluent circumstances, after his certificate, promises to pay the whole of his debts; or if a man promise to perform a secret trust, or a trust void for want of writing by the statute of frauds. In such and many other instances, though the promise gives a compulsory remedy, where there was none before either in law or equity, yet as the promise is only to do what an honest man ought to do, the ties of conscience upon an upright man are a sufficient consideration;" and *Buller, Justice,* in his opinion says, "the true rule is, that wherever a defendant is liable in equity and conscience to pay, that is a sufficient consideration;" and he says that the rule, that to constitute a valid consideration for a promise, there must be a benefit to the promisor or loss to the promisee, is much too narrow. The executors in this case held the wife's legacy as trustees, and wherever it is necessary for a husband to resort to a court of equity to get possession of his wife's legacy, that court will require him to do equity, by making a settlement upon his wife and children, before it will lend him its aid in the recovery of it. This is considered to be an equitable duty on his part, and formed, we think, a sufficient consideration for his promise in this case. The waiver moreover on the part of the executors of the refunding bond, which it appears by the laws of *Pennsylvania* they had a right to require, formed an additional consideration

for the agreement on the part of the husband for the benefit of his wife. It is also to be considered in the decision of this controversy, that according to the proof, the husband received the money of his wife, not in virtue of his marital rights, so as to amount to a reduction of the legacy into possession, but as her trustee and for her benefit; on the death of the husband therefore, it continued to be her property, for which she had a claim against his estate, and did not go to his personal representatives. On this point the authorities hold a language uniform, explicit and unequivocal.

The agreement then being valid and obligatory upon the husband, is to be considered as a substitution for the equity of the wife, which operated for the benefit of the wife and children, though not named, and which a court of equity would specifically execute against the husband, upon a bill filed for that purpose. In support of this doctrine, see the case of the *Attorney General vs. Whorwood,* where *Lord Hardwick* recognises the validity of an agreement made by a husband with a trustee, for the purpose of obtaining his wife's money out of his hands, which the trustee had received upon the sale of her father's estate, and decreed an execution of the agreement, on the death of the husband, against his representatives. The agreement was, to invest the money in the purchase of land, to be settled for her benefit for life, and if there were no children, then on himself. In that case his lordship said "that it had been truly insisted, on behalf of the wife, that on the husband's application for the money, the court would undoubtedly have ordered a further settlement." If then the parties did not come into court, but acted among themselves, and the husband had agreed to do that which the court would have directed, had the wife insisted on it in a proper suit, it should have its full effect. It has been solemnly settled by this court, and has also been decided by *Chancellor Kent,* in *New York,* that the wife's equity will prevail against an assignment of the husband for valuable consideration or in payment of a just debt. See 4 *G. & J.* 282; 5 *John. C. Rep.* 484, where *Chancellor Kent* also decides, that the court may, in its discretion,

give the whole or part only of the property to the wife according to the circumstances of the case; to same effect, see 6 *John. C. Rep.* 178.

If we are correct in the views which we have taken, as to the binding and operative effect of the agreement of the husband in this case, the next question which arises is, did his failure to invest according to the terms and conditions under which he received the legacy, give to his wife the right to elect to consider him her debtor to the amount of it, as so much money had and received to her use? Upon principle, and authority, we think it did give her that right. He received the money upon a special trust and confidence, that it would be invested for her benefit; he received it as her trustee; and upon his failure to make that investment, the consideration upon which he received it failed, and she had a right to consider it as so much money had and received for her use. See 1 *Harr. & Gill*, 258, where it is said, "if one man takes another's money to do a thing, and refuses to do it, it is a fraud; and it is at the *election* of the party injured, either to affirm the agreement, by bringing an action for the non-performance of it, or to disaffirm the agreement *ab initio*, by reason of the fraud, and bring an action for money had and received for his use." The action for money had and received is an equitable action, and equally as remedial in its effects as a bill in equity. In *Moses vs. Macfarlan*, 2 *Burr.* 1012, *Lord Mansfield* says, "the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money." There can be no doubt that the wife may be a creditor against her husband's estate, after his death. 1 *Harr. & Gill*, 280; *Powell on Contracts*, 109; 3 *P. Will.* 335; 1 *Vernon*, 427. These last cases, it is true, were cases in equity, and there were no creditors to contend with, but they shew that as between husband and wife the relation of debtor and creditor may exist; and in the case in *Vernon*, the wife was administratrix of her husband, and was permitted to retain for her claim out of his assets. But whether the debt be legal or equitable, this court have decided,

it is equally within the power and jurisdiction of the orphans court to allow it. In this case, however, for the reasons already given, we think the claim of the wife supported by such considerations as constitutes it a debt recoverable in a court of law. We do not think that the decision of this court, reversing the decision of the orphans court allowing the claim, can operate to bar the recovery, it being the exercise of an appellate jurisdiction, reviewing the order of an inferior court, possessing in reference to the subject before it, a *prima facie* jurisdiction only. As to the objection, that the executors transcended their powers in demanding the execution of the agreement, before they would consent to pay over the money to the husband, we think that it is entitled to no consideration. The agreement having been entered into by the husband, with a full knowledge of all the facts, without fraud or surprise, and being founded upon a valid consideration, cannot be otherwise than obligatory. It seems, however, that the executors may interfere to protect the wife's equity; for in 5 *John. C. Rep.* 473, *Chancellor Kent* refers to a case where it appears the bill was filed by the executor of the testator, to stay the husband who had instituted a suit in the spiritual court for his wife's legacy. *Lord Mansfield* said, it made no difference who was plaintiff in equity, and he directed that the money should be disposed of for the benefit of the wife. We do not think that the husband can shelter himself under a mistake of the law; he not only appears to have taken legal advice upon the subject of his marital rights, in relation to the legacy, but if he had not, there is, we think, nothing in this case to except it out of the operation of the general rule, that ignorance of the law cannot be made available with a full knowledge of all the facts. The case of *Bowley and Lammott* was decided upon a principle wholly inapplicable to this case. That was a case where a forfeiture of title would have been incurred, if the general rule, that a knowledge of the law in civil cases shall be presumed, where there is a full knowledge of the facts, had been permitted to operate; it was to charge the party with a *fraudulent* concealment of title, in the absence of actual

knowledge, upon the legal presumption, which imputed knowledge. In that case, the application of such a principle was looked upon as being too monstrous and unjust, to receive for a moment the countenance or sanction of the court; it was a doctrine most glaringly unjust, and alike repudiated by the rules of morality, a refined sense of justice, and the principles of law. It was therefore rejected. We think there is nothing in the objection, that the claim of the wife against her husband's estate had not been allowed by the orphans court; the decision of that court, whether favorable or unfavorable, not having a conclusive effect upon the question, when submitted to a court of law for adjudication.

We believe we have now taken a view of all the questions involved in the prayers made by the respective parties in the court below, and upon the best consideration we have been able to give to the subject, we approve of the judgment of that tribunal, and think it ought to be affirmed.

The *first*, *second*, *third* and *fifth* prayers made to the court below by the counsel for the plaintiff, were properly rejected, as being mere abstract legal propositions, putting the agreement entirely out of view, upon which the defendant rests her claim to retain.

The *fourth*, we think, was properly rejected for the reasons before expressed.

The *sixth* prayer, as to the binding effect of the decision of the Court of Appeals, in the case of the appeal from the orphans court, was properly rejected for the reasons already given. The effect of the agreement, as now proved, not being in the view of that court when the decision was made.

The *seventh* prayer was, we think, also properly rejected; for the reasons already given, we think the agreement was a valid one, and supported by an adequate consideration.

The *eighth* prayer, founded on a mistake of law, for the reasons already assigned, was likewise properly rejected.

The *ninth* prayer was also properly rejected; under the agreement, it was his duty to invest; no laches is imputable to the wife or executor, so as to create a forfeiture: if a delu-

sion existed, it sprung from his bad faith, he having always declared his intention to be, to make the investment according to contract.

The *tenth* prayer was also properly rejected, for the reasons already given. The proposition contained in this prayer was too untenable to receive for a moment the sanction of the court, that is, that the claim of the wife was totally destitute of evidence to support it.

The court, we think, were right in rejecting the *eleventh* prayer, for the reasons already given; the claim, we think, did not require the sanction of the orphans court.

The court, we think, were right in rejecting the *twelfth* prayer, there being no evidence in the case to sustain it.

The court were clearly right in rejecting the *thirteenth* prayer; there was evidence sufficient to go to the jury to prove such promise.

The court were right in rejecting the *fourteenth* prayer, for the reasons before stated.

The court, were right in rejecting the *fifteenth* prayer, for reasons which have been already stated; there was a sufficient consideration to sustain the promise.

The court were right in rejecting the *sixteenth* prayer, there being no evidence to warrant it.

For reasons already given, the court were right in rejecting the *seventeenth* prayer; if the agreement was a valid one, her consent when the money was paid under it, would not annul or vacate it. She was entitled to the benefit of it, and her consenting to the payment of the money when it was paid, without at that time annexing any conditions or qualifications to such payment, would not deprive her of the benefit of that agreement. No stipulation on her part was necessary for the protection of her interest. She had a right to rely upon and claim the benefit of the contract which had been made by the executors for her use.

The court were also right in rejecting the *eighteenth* prayer. The release had nothing to do with the agreement; the agreement having been made, the release was made to

discharge the executors, it was only collateral to the agreement. The prayer was clearly not warranted by the proof, and was, therefore, properly rejected.

The *nineteenth* prayer was properly rejected. *Mrs. Stevenson* being one of the personal representatives of her husband, could institute no suit against herself, at law; the act of limitations, therefore, did not apply to the case, and created no bar to the recovery of her claim.

The court were right in granting the defendant's prayer; the record containing sufficient evidence to warrant the jury in finding the facts upon which it was predicated. The judgment of the court below is affirmed.

                                        JUDGMENT AFFIRMED.