WILLIAM D. MACKEY, Executor, and JOHN THOMAS
KELSO vs. ELLA YOUNG DANIEL, and others. SAME
vs. SAME.

*Waiver of Right of Appeal—Sufficiency of consideration to
Support an agreement to Waive the right of Appeal.*

By an agreement, free from all shadow of fraud, mistake or surprise,. signed by counsel representing the executors, and others interested in the distribution of a testator's estate, and filed in the case, the right of appeal from a decree passed some six months previously, construing certain clauses of the testator's will, was waived, and consent was given to the passage of a decree for the final distribution of the testator's estate. Accordingly an order was passed for the immediate distribution of the residue. The consideration moving to K. one of the parties to the agreement, to waive his. right of appeal, was the immediate possession of his share of the residue of the estate without further litigation or delay. HELD:

1st. That the agreement to waive his right of appeal, was binding,. being supported by a sufficient legal consideration, and K. was. concluded thereby from maintaining an appeal.

2nd. That the waiver of the right to appeal from the decree, excluded the right to appeal from an order finally ratifying the auditor's report distributing the residue of the estate in conformity to the decree.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, STONE, ALVEY, ROBINSON, and IRVING, J.

*Isaac D. Jones,* for the appellants.

*O. F. Bump, Charles Marshall,* and *Severn Teackle Wallis,* for the appellees.

STONE, J., delivered the opinion of the Court.

Thomas Kelso, of the City of Baltimore, died in 1878, having executed a will which was duly admitted to probate. In his will he appointed Francis A. Crook, William Daniel, Harrison Adreon and William D. Mackey, his executors. Some difficulty having arisen among his executors as to the true construction of some of the clauses in his will, some of the executors filed a bill in the Circuit Court of Baltimore City against their co-executors and all interested in the matter in dispute, asking the Court to construe said will, and praying that the estate might be settled under the direction of that Court. The appellant, John Thomas Kelso, who was a special, as well as one of the residuary legatees, was a party thereto. Upon the answers coming in, the Court proceeded to give a construction to the controverted and doubtful clauses of the will, and on the 27th of June, 1881, that Court filed an opinion and decree construing, among other clauses, the 22nd clause of the will. This opinion and decree was adverse to the claim of John Thomas Kelso, one of the appellants, in deciding that the amounts mentioned in the 22nd clause, that is $3000 and the rent of the tenants on the Kelso home lot, were not additional to the legacies given in other parts of the will. On the 29th of Dec., 1881, fully six months after the filing of this opinion and decree, the following agreement was made and entered into by John Thomas Kelso and William D. Mackey, the appellants, with certain other parties interested in the estate of Thomas Kelso :

"Harrison Adreon, William Daniel and William D. Mackey, complainants and executors, under the will of the late Thomas Kelso, Jessie Adreon, Ella Young Daniel, John Thomas Kelso, Jane M. Kelso, Elizabeth Blackwood, William Blackwood, Sallie B. Cook, Theodore Cook, and Harrison Adreon, William Daniel and Sallie B. Cook, administrators upon the estate of Jane M. Guiteau, parties

entitled to the residue of the estate of said Thomas Kelso,. under the residuary clause in his will, hereby waive the exercise of their right of appeal from the decree passed in this case on the 27th day of June, 1881, and pray that an order may be passed for the final distribution of the estate of Thomas Kelso.

S. T. WALLIS,

*Solicitor for Dr. and Mrs. Blackwood and Miss Macklin.*

CHARLES MARSHALL,

*Solicitor for William Daniel and Harrison Adreon, Ex'rs.*

ISAAC D. JONES,

*Solicitor for Wm. D. Mackey, Ex'r.*

C. M. DASHIELL,

*Solicitor for John T. Kelso and Jane M. Kelso.*

ORLANDO F. BUMP,

*Solicitor for Ella Young Daniel, Jesse Adreon, Sallie B. Cook, Theodore Cook, and Harrison Adreon, William Daniel and Sallie B. Cook, administrators."*

Immediately after the filing of that agreement, the Circuit Court passed an order, which after reciting the agreement, referred the case to the auditor with instructions to distribute the residue of the estate among the parties entitled, according to the will, only reserving such sums as might be necessary to await the result of claims against the estate. In obedience to that order, the auditor proceeded to distribute the residue of the estate, and in distributing his share of the residue to John Thomas Kelso, the auditor was governed by his, the auditor's, construction of the decree of the Court, passed on the 27th of June, 1881, and made the distribution to said Kelso upon the principles, as he supposed, determined by that decree. Exceptions were filed to the report, the exceptions were overruled and the audit was finally ratified on the 28th of March, 1882, and an appeal was taken by Mackey and John Thomas Kelso on the same day, from the order finally ratifying the report. On the 24th of

March, 1882, the appellants also appealed from the decree of 27th June, 1881. Upon this state of the record the appellees have made a motion to dismiss the appeals, and the question first arises whether we shall or shall not entertain the appeals.

With reference to Mackey's appeal it is not necessary to decide the question whether he has such an interest in the subject-matter of the decree and consequent report of the auditor based thereon, as would authorize an appeal by him.

John Thomas Kelso was directly interested in the subject-matter, his appeal was taken in time and must be allowed unless he has waived his right thereto, and whether he has done so must depend upon the agreement above mentioned.

Before considering the effect of this agreement it may be well to state, that there is not a shadow of fraud, mistake or surprise attaching to this agreement; on the contrary, it appears to have been made upon the fullest deliberation, by eminent counsel, whose names, wherever they are known, are a guarantee of fair and honorable professional dealing; and that they had the right as counsel to make such agreement is no longer an open question.

The Court of Appeals in *Ward's Case,* 14 *Md.,* 158, recognize to the fullest extent the right of counsel by agreement to waive the right of appeal, but a majority of the Judges who sat in the case (there being only three who did sit) were of opinion that the agreement to waive the right of appeal must have some consideration to support it, otherwise it was *nudum pactum.* The then Chief Justice LEGRAND dissented, and was of opinion that an agreement made by counsel to waive an appeal, free from fraud or mistake, was sufficient of itself without a consideration, and thought the appeal in that case ought to be dismissed.

Without undertaking to decide whether the late Chief Justice, or the majority of the Court were right in that

case, we will proceed to consider whether the agreement before us has a legal and valid consideration, so as to bring it within the opinion of the majority of the Court in that case.

Thomas Kelso died possessed of a large estate, and a considerable amount was at the date of the agreement in the hands of his executors, to be distributed among his residuary legatees.

This residue could not be safely distributed by the executors, until the correctness of the decree of 27th of June, 1881, had been determined by the Court of Appeals, *provided an appeal was taken* to that Court. An appeal to that Court involved in all likelihood a delay of a year or more. If the decree of 27th June, 1881, was reversed, then John Thomas Kelso as residuary legatee, would get more than he would if that decree was affirmed. In case of an affirmance he would be liable for costs, and would have been kept out of all share of the residue until the final settlement of the appeal. In this state of the case John Thomas Kelso by his counsel signed the agreement. This agreement consists of two distinct matters, the first an agreement on the part of the residuary legatees (including John Thomas Kelso and wife,) to waive the right of appeal, and secondly an agreement or consent on the part of the executors to an immediate distribution of the residue. This is the fair construction of the agreement. The consideration moving John Thomas Kelso to waive his appeal, was the immediate possession of his share of the residue of the estate, without further litigation or delay. This consideration he actually received, for on the very day that the agreement was filed, the Court below, after reciting the agreement and waiver, passed the order for the immediate distribution of the residue. That this contract on the part of the executors on the one side to agree to the immediate distribution of the estate, and on the part of the residuary legatees to waive their right of

appeal, is supported by a sufficient legal consideration we do not think there can be a doubt.    The surest test to be applied to this agreement is the rule of mutuality.

If the appellant, John Thomas Kelso, could not have enforced it against the other parties to it, the executors, then it should not be enforced against him, but if he could, then reason and justice require, that he should be compelled to comply.

Now this Court has in *Stevenson's Case,* 1 *Gill,* 1, in enumerating the sufficient considerations to support a contract, included among them, the waiver of a legal right; a contract supported by such a consideration can be enforced at law or in equity according to the subject-matter thereof.    If therefore, the appellant Kelso had gone, as he did go, before the Circuit Court with this contract in his hand, he was clearly entitled to have it enforced by the order which the Court passed; the other parties in interest have therefore the right to have it enforced against him, and we must enforce it by dismissing his appeal from the decree of the 27th of June, 1881.

The other question in the case is whether the auditor's report appealed from, distributes the residue of the estate to John Thomas Kelso in conformity to the decree of the 27th of June, 1881, for if it did, that appeal must also be dismissed.

It appears from the record, that *before* the decree of 27th June, 1881, to wit, on 3rd February, 1880, the legatees under the will, including John Thomas Kelso and Jane Kelso his wife, filed in the Circuit Court, a petition, praying that the executors might be ordered and directed to pay over to them, their several legacies, and assigning as the reason why they asked the payment of their legacies before the Court had construed the disputed clauses in the will, that the estate was *more than ample* to pay every legacy and bequest, whatever construction the Court might put upon the disputed clauses, and that such pay-

ment therefore could not affect the rights of any one interested.

The executors answered this petition, and admitted the facts therein stated, and upon the petition and answer the Court ordered the legacies to be paid over to the legatees.

While the record is not very explicit on the subject, we conclude from it, that John Thomas Kelso, and Jane, his wife, had *before the filing* of the petition of 3rd of February, 1880, received from the executors the $3500 which they then claimed as additional to their other legacies, but which was one of the disputed questions that the Court had not then determined. When the Court did determine it on the 27th of June, 1881, it decided that the $3500 was not additional to, but only a part of their other legacies.

When therefore, the case was referred to the auditor, to distribute the residue of the estate among the residuary legatees, it clearly appeared from the proceedings that John Thomas Kelso, and Jane, his wife, had received just $3500 more than they were entitled to out of the estate. The appellant Kelso, now contends that this $3500 can not be taken out of his share of the residue, because the Judge in his decree of 27th of June, 1881, says, it was to be taken as an advancement on his legacies, and as his legacies have been paid in full, therefore he can not be held to account for the $3500 at all. Such is at least the effect of his position. To so narrow and technical a construction of the decree of the 27th of June, 1881, the petition and order of the 3rd of February, 1880, and the agreement in this case we cannot assent. In the petition of Kelso and wife filed on 3rd of February, 1880, and assented to by the executors, and ratified by the Court, it is distinctly stated that the residue of the estate was more than ample to pay every bequest, no matter what construction might thereafter be placed on the will. That petition clearly meant that if Kelso and wife were mistaken in their claim to the $3500, which they had already received, it could be equalized,

and the wrongful payment remedied when a settlement of the residuum was made.

We think upon a fair construction of the opinion and decree of the 27th of June, 1881, that such was the meaning of that decree, such decree being based upon and made with full knowledge of all the prior proceedings in the case.

The other residuary legatees who were interested in the construction of the 22nd clause of the will, Mrs. Blackwood and Mrs. Guiteau, so understood it, and have acquiesced in the report of the auditor, and consented at once that the overpayments to them should come out of their share of the residuum. Unless the overpayment on account of the legacies to Kelso and wife, is taken out of his share of the residuum, the other residuary legatees or the executors must lose it, and Kelso and wife get just $3500 more than the testator intended them to have, and get it at the expense of other objects of the testator's bounty. On the other hand the construction put upon the decree by the Judge who passed it, and who ratified this report, is the true one; under the auditor's report so ratified each legatee gets his full share, and no more.

Being of opinion that the auditor's report D, was made in conformity to the decree of the 27th of June, 1881, we must dismiss the appeal taken from the ratification thereof.

We may add, that while we dismiss the appeals in this case, we think the construction placed by the Court below on the twenty-second clause of the will, clearly correct, and that we should have affirmed this order upon the merits, if the case had been properly before us.

*Appeals dismissed.*

(Decided 6th March, 1883.)