HENRY H. BROWN

vs.

ROBERT STEWART AND OTHERS.

——

ROBERT STEWART

vs.

HENRY H. BROWN.

MARCH TERM, 1849.

[SETTLEMENT—COMMISSIONS TO ADMINISTRATORS—EVIDENCE—LIMITATIONS.]

A SETTLEMENT between parties accompained by a sealed obligation of one to pay the balance found due by the settlement, must be regarded as concluding all antecedent transactions between the parties, unless it can be shown by proof that it was founded upon mistake or was procured by fraud.

Agreements transferring the right to administer upon an estate to a third party, in consideration of receiving from such party the commissions, are against the policy of the law.

But an agreement between two parties, both equally entitled, that a joint administration shall be taken out, and that as the principal labor and responsibility was to be borne by one, the other would be content with such portions of the commissions as his associate should think he deserved, is valid.

Where there are two executors, both are equally entitled to commissions, and, in the absence of any express agreement, neither can deprive the other of his share, upon the ground that the party claiming the whole has performed the entire labor of settling up the estate, but by an agreement inter sese they may provide for an unequal division of the commissions, or that one shall have the whole.

It may be shown by parol evidence which of two parties to a pecuniary obligation, binding upon both, is the principal debtor, so as to adjust the equities as between themselves.

The act of limitations does not apply to the claim of one of two administrators, against the estate of his intestate ; he cannot sue himself at law.

——

[A statement of the facts of these cases and of the allegations of the bills and answers will be found in 1 *Md. Ch. Decisions*, 87, where the first opinion of the Chancellor is reported. Thos. R. Cross, the party upon whose estate Brown & Stewart jointly administered, was the father-in-law of each. The proceedings in the case subsequent to the filing of the opinion previously reported, are sufficiently stated in the following opinion of the Chancellor.]

THE CHANCELLOR:

By an agreement, filed on the 3d of February last, these cases are to be consolidated and the testimony and exhibits taken and filed in the two cases, are to be used indiscriminately in each.

But the cases though thus blended and argued together, must, to some extent, be considered separately, as there are questions which are not common to both, and which must be kept distinct to avoid confusion.

The substance and the object of the bill filed by Brown was stated in the opinion delivered by this court on the 12th of October last, when it was said that the settlement between him and Stewart, of the 21st of December, 1843, must be regarded as concluding all antecedent transactions between the parties, unless it could be shown by evidence, to have been founded upon mistake or to have been procured by fraud, (see 1 *Md. Ch. Decisions*, 87,) and the question, therefore, now is, confining our attention for the present to the case instituted by Brown, whether Stewart has succeeded in showing either mistake or fraud in the obtention of that settlement.

The injustice of which Stewart complains is, that he was not in that settlement credited with a full moiety of the commissions allowed to Brown and himself as administrators of Thomas R. Cross, in their account, which was passed on the 3d of January, 1843. In that account there was allowed the accountants the sum of $785 96, whilst in the settlement referred to, the last credit in which is under date the 12th of November, 1842, Stewart is credited with only $200 on account of commissions.

The counsel of Stewart insists, that as this credit preceded in point of time the allowance of commissions by the Orphans Court, it is to be regarded as a mere conjectural estimate of the commissions, and to be corrected when the actual amount should be fixed by the Orphans Court.

Such, however, does not appear to be the character of the credit as displayed upon the face of the paper. On the contrary, looking to the language in which the credit is expressed there is every reason to suppose it was the sum definitely fixed

and agreed upon by the parties. And although the credit is entered on the 12th of November, 1842, prior to the allowance of commissions by the Orphans Court, the single bill of Stewart appended to the settlement, and given for the balance ascertained by it to be due, bears date on the 21st of December, 1843, upwards of eleven months after the allowance. In addition to this, it appears by a paper proved to be in the hand writing of Stewart, and dated on the 23d of the same month and year, that to secure the payment of the same precise sum he conveyed to Brown, by a bill of sale, certain articles of agricultural produce, which, notwithstanding he, Stewart, afterwards sold.

Now it is said, that though Stewart, in this solemn and authoritative manner recognized his indebtedness to Brown in the sum fixed by the settlement, and that although he did this after he knew or certainly had the means of knowing the amount of commissions allowed by the court, that still he is not to be concluded, but may now open that settlement, and show it to be erroneous with respect to transactions and proceedings which had occurred before he signed and sealed instruments acknowledging his indebtedness, in the sum in question, in the most obligatory form known to the law.

No attempt has been made to impeach the settlement on the ground of fraud, and I can see nothing in the evidence to show that these instruments were executed under the influence of mistake. The only witness who speaks upon the subject of commissions is Mr. Camden, and if he is to be credited, and there is nothing in the cause upon which a suspicion of his veracity can be founded, the amount of compensation to be paid by Brown to Stewart for such services as he might render as one of the administrators, was referred exclusively to the discretion of the former.

Conceding the agreement between these parties to be proved, it is supposed it is obnoxious to the remarks of the Court of Appeals, in the case of *Owings* vs. *Owings,* 1 *Har. & Gill,* 484, in which agreements transferring the right to administer upon an estate to a third party, in consideration of receiving from

such party the commissions, is condemned as against the policy of the law. It does not appear to me, however, that the agreement between these parties, as proved by the witnesses, falls within the principle, or is of that class of agreements which the court said should not be encouraged.

It is not a contract made by a party entitled to the adminis-tration by which he agreed to surrender his right to another in consideration of his receiving from the latter the commissions which might be allowed for settling the estate, but it is an agreement between two parties, both equally entitled, that a joint administration should be taken out, and as the principal labor and responsibility was to be borne by one of them, the other would be content with such portion of the commissions as his associate should think he deserved. There is, therefore, in the agreement between these parties nothing which should expose it to the censure which the Court of Appeals considered would attach to a contract, by which a party entitled to administer on an estate undertakes to sell that right for the commissions.

This is no sale of the right to administer, but a mere agreement between parties, entitled by law to administer, by which one of them, upon a consideration, deemed by him at the time to be adequate, stipulated that he would be satisfied with such compensation as his associate might think proper to allow him. I can see nothing in such an agreement which should induce the court to disregard it as at variance with the policy of the law, and likely to result in pernicious consequences.

Neither is this contract between these parties in opposition to the case of *Richardson* vs. *Stansbury*, 4 *Har. & Johns.*, 275, in which the Court of Appeals decided, that one executor was bound to give his co-executor his share of the commissions, though the latter may have left all the labor to be performed by his colleague, as in that case, no agreement was shown to have been entered into between the parties. The case simply decides, that as the executors are equally entitled to the commission, neither can deprive the other of his share upon the ground that the party claiming the whole has performed the entire labor of

settling up the estate. But the case does not decide, or professes to decide, that the executors may not *by agreement, inter se,* provide for an unequal division of the commissions, or even that one of them shall have the whole.

Upon this part of the case, therefore, I am of opinion, that the defendant, Stewart, has not succeeded in showing mistake or imposition in the settlement between him and Brown, and that there is nothing which can upon legal grounds affect the validity of that settlement, the mortgage which was given to secure the payment of the sum ascertained by it to be due, must be enforced either by selling the property remaining unsold or by appropriating to the payment of the mortgage debt the money now in bank arising from the sale of a portion of the mortgaged property.

The questions presented by the bill filed by Stewart remain briefly to be considered.

With respect to his claim to a distributive share of the estate of Thomas R. Cross, in the right of his wife, his right to an account is not understood to be contested, and the only question, therefore, in controversy upon this bill has reference to the claim of McKenna & Company, for which it is alleged the estate of Cross is primarily responsible, though the debt as shown by the proof was originally contracted by Stewart.

This debt was founded upon a joint and several single bill, executed by Stewart and Cross, to McKenna & Company, in January, 1838, to secure a debt due from Stewart to the obligees, as shown by the complainant's own proof; but an attempt is made to show that though the debt was the debt of Stewart, Cross was bound to pay it, and contracted so to do, in consideration of an indebtedness from him to Stewart. And that Cross having failed to make such payment as agreed, and the money having been paid by Stewart, he is now entitled to look to the estate of Cross for reimbursement. The evidence shows that after the death of Cross, separate suits were brought by McKenna & Company against his administrators, and Stewart as surviving obligor, and judgments recovered at April term, 1842, and that the money was paid by Stewart in the summer and fall of 1843.

The witness chiefly relied upon to prove that Cross was in truth the principal in the obligation to McKenna and Company, is Charles Griffith, who says that when the instrument was executed, Cross admitted there was some unsettled business between him and Stewart, and that he offered to sign first, remarking, if he signed first it would make him principal, and the witness understood from the conversation of the parties that Cross was to pay the debt for Stewart, but the witness did not hear Cross say why he was to pay it. It was also proved by John H. Brown that Cross told him that he intended to pay the debt due from Stewart to McKenna and Company; that he was indebted to Stewart, and thought it was his duty to do so.

This proof is unquestionably calculated to produce a presumption that as between Cross and Stewart, the former was the principal debtor in the obligation to McKenna and Company, and but for some other circumstances which are scarcely reconcilable with this state of things, it would be extremely difficult to resist the conclusion. Exceptions have been filed by the solicitor of Brown to this proof upon the ground that it is an attempt to prove by parol the liability of Cross to pay the debt of another, which cannot be done. The proof, however, does not appear to me to be exposed to this objection. It is not an effort to show by parol evidence the liability of one party for the debt of another, but to show by such proof which of two parties to a pecuniary obligation binding upon both is the principal debtor, so as to adjust the equities as between themselves, a thing of common occurrence in this court.

But the circumstance which, in my judgment, militates most strongly against the conclusion which Stewart seeks to establish by his proof, is the time which he has suffered to elapse before he brought this claim forward. The debt to McKenna and Company matured in 1840, the year in which Cross died. Suits were brought against his administrators, of whom Stewart was one, and against himself individually, and judgment was recovered in 1842, and the money paid by him in 1843, and yet it is not until 1847, four years subsequently, that he sets it up as a claim against the estate of Cross. In answer to this im-

31*

putation of delay, it has been said that Stewart had no motive to press his claim against the estate of Cross, so long as Brown forebore to proceed against him upon the mortgage, his purpose being to set one off against the other. But these claims were not of that character that one could be set off against the other, and if they could, it seems strange that Stewart should be willing to leave the business open so long, Brown holding his sealed obligation, secured by mortgage, and he having nothing whatever to establish his right to a set-off, his title thereto, and of course his only security resting upon the memory of witnesses who might die or be absent or forgetful.

Still, it is possible that this is to be attributed to his negligence, and not to a consciousness of the infirmity of his claim, and, therefore, I am not disposed at this time to press the presumption too strongly against him, but will leave this question open to be reported on by the Auditor, and will give the parties leave to take further testimony before him, or before a justice of the peace in the usual way.

That limitations is no bar to this claim, is shown by the case of *State, use of Stevenson* vs. *Reigart*, 1 *Gill*, 1 and 32.

The counsel may prepare a decree in conformity with these views.

A. RANDALL, for Brown.
STOCKETT and ALEXANDER, for Stewart.

*Note by Reporter.*—The agreement referred to by the Chancellor as being considered obnoxious to objection by the Court of Appeals in the case of *Owings* vs. *Owings*, 1 *H. & G.*, 492, was, where a widow *declined* to administer on her deceased husband's estate, and permitted the brother of the deceased to obtain such letters, upon consideration that he would pay her all the commissions which should be allowed him by the Orphans Court. In the case of *ex parte Young, adm'x of Young*, 8 *Gill*, 285, the court say, the right to administer *cannot be delegated*. *Judge Frick*, in delivering the opinion in that case, says: "The appointment and the rights of administrators are