# McINTIRE *v.* McINTIRE.

ADMINISTRATORS; INTEREST; COUNSEL FEES; COMMISSIONS; OR-
PHANS' COURT; DISTRIBUTION; WILLS, CONSTRUCTION OF.

1. Where a legatee has charged an administrator *c. t. a.* with the receipt of certain cash which he has omitted from his inventory of the estate, and after the passage of a consent decree referring the controversy to arbitrators and providing that if their finding be against the administrator he shall be charged with interest on the money, he admits its receipt and shows that it was disbursed to certain other and special legatees, on his final accounting the administrator should be charged with interest on the money while it was in his possession.

2. And, under such circumstances, the amounts received by such special legatees should be credited upon their special legacies as of the date of receipt, and not against any interest they may have in the residue of the estate, the presumption being that the payment was on account of the interest-bearing legacies.

3. Where, pending a will contest, an order is passed on the petition of legatees, who are also next of kin, directing counsel fees to be paid for defending the will and to be charged against the interest of the petitioners, without prejudice to their right to apply to the court at the termination of the litigation to have the allowance charged to the estate, and the will is sustained, a final order approving the administrator's account, in which the estate is charged with the payment of the counsel fees, will be regarded as amending or vacating the previous order, although no special application was made as provided for in that order.

4. After a will has been admitted to probate and an administrator c. t. a. appointed, it is his duty to appear to a caveat filed against it and to make defense on behalf of the beneficiaries; and he is entitled to a reasonable allowance for attorneys' charges incurred therein.

5. Counsel fees ordered to be paid upon a petition of special legatees wherein they recite their special interest under the will which has been attacked and that they had retained counsel "who for some months past has been managing their interests," should, in the final account of the administrator c. t. a., after the will has been sustained, be charged against the interest of the special legatees and not against the estate.

6. Where the assets of an estate, with the consent of an administrator c. t. a. and by order of the Orphans' Court, are placed in the custody of third persons pending a contest over the validity of the will, and after the will has been sustained are returned to the administrator c. t. a., any commission allowed by the court to such custodians must be taken into account in any allowance subsequently made to the administrator c. t. a.

7. An administrator c. t. a., who, in consideration of being permitted to remain such pending a contest over the validity of the will, expressly agrees to relinquish all commissions, can not thereafter be heard to deny the obligation of that relinquishment.

8. Although the Orphans' Court of this District has but a limited jurisdiction, the power given it by statute to settle the accounts of executors and administrators, to secure legatees and to order distribution, includes, by necessary implication, the power to construe the provisions of a will in so doing; but whether its action is reviewable by a proceeding in a court of general jurisdiction, quære.

9. A bequest to the children of the testator's brother of a certain sum of money with interest calculated at 6 per cent. per annum from a given date to the date of the testator's death, is a bequest to each of them.

10. Under the provision of a will that the residue of the estate is to "be equally divided between my brothers Edwin and Charles' children," the distribution is to be made *per capita.*

11. An administrator should be charged with interest on an interest-bearing investment made by order of the court, unless it be made to appear that the interest could not be collected by the use of reasonable diligence.

12. When the assets of an estate are ordered to be brought into court and are subsequently entrusted to receivers, by consent of all parties, to be invested pending a contest over the validity of the will, an administrator *c. t. a.* is chargeable with interest on money retained by him where it is not shown that it was used or kept for the necessary benefit of the estate.

No. 817.  Submitted February 8, 1899.  Decided February 28, 1899.

HEARING on an appeal by the exceptants from an order of the Supreme Court of the District of Columbia holding a special term for orphans' court business, approving the final account of an administrator *c. t. a.*, and directing distribution of the estate.  *Reversed.*

The COURT in its opinion stated the case as follows:

This is an appeal from an order of the Supreme Court of the District, holding a special term for orphans' court business, passing and approving the final account of Edwin A. McIntire, administrator of the estate of David McIntire, deceased, and directing distribution in accordance therewith.

David McIntire died April 1, 1884, in the District of Columbia, leaving a will making certain bequests, but naming no executor.

The clauses of that will, that have any relation to the matters in controversy, are the following:

"This my last will and testament.

"I David McIntire. tin-plate worker, of this city [of] do will, bequeath, or devise, to my nephews, and nieces, that is to say, from July the first. 1st eighteen hundred and fifty-four, 1854

"To the opening of. or reading of this, paper. one thousand three hundred and fifty dollars and sixty-four cents ($1,350.64) is to be calculated at six 6 per cent. interest

" That amount whatever it may be is to be given to each ·of my Brother Edwin's children. The remainder if any, is to be equally divided between my Brothers Edwin and Charles children."

The brother Charles referred to in the foregoing, was living at the time of the testator's death. He had one child, Charles McIntire, Jr., who is the appellant in this proceeding. The brother Edwin died before the testator, leaving five children, namely, Edwin A., Martha, Adaline, Emma T. McIntire and Elizabeth Test.

A petition for probate of the will was filed by Martha McIntire, and probate was had April 12, 1884. On the same day, at the request of his sisters, Edwin A. McIntire was appointed administrator with the will annexed, and gave a bond in the sum of $8,000, with two of his sisters as sureties.

The inventory returned by the administrator, January 26, 1885, showed an estate in cash and securities amounting to $47,987.20. A controversy arose between Charles McIntire, Jr., and Edwin A. McIntire in respect of the sum of $10,000 cash alleged to have been received by the latter and omitted from the inventory, which was settled by an order made February 19, 1885, the administrator and all the legatees expressly consenting thereto.

This decree provides:

1. That Edwin A. McIntire shall act as administrator of said David McIntire, but without any allowance for commission or other charge for his services as such administrator.

2. After reciting the controversy, that the same be referred to the arbitation of Campbell G. Berryman, James M. Johnston and James G. Payne or any two of them, with direction to hear all the proofs and make a decision and return the same into court; " and if the said decision shall find that

the said Edwin A. McIntire has received or ought to account for the said sum of $10,000, thereupon it is ordered that the entire share of the said Edwin A. McIntire, as legatee and distributee in the whole estate of said David McIntire, or so much thereof as may be necessary, shall be retained, appropriated, and applied by this court to the payment to the said estate of said sum of $10,000, and interest thereon from the time when the same was found by said arbitrators to have been received by him, or from which he was accountable to said estate for the same; and if the said share should be found insufficient to pay the said sum of $10,000 in full, and any interest thereon, as aforesaid, then the said Edwin A. McIntire shall forthwith pay into this court, in cash, the additional sum necessary to make up any such deficiency.

"3. And it is further ordered that if for any reason it shall appear to this court that the said share of the said Edwin A. McIntire, as distributee and legatee of the said estate, may not be applicable to the payment of said sum of $10,000 and interest, as aforesaid, in whole, as above mentioned, or that for any reason the said indebtedness to be found, as aforesaid, can not be set off against his said share in said estate, then it is ordered that the said Edwin A. McIntire shall thereupon at once pay the said sum of $10,000 and interest thereon, as aforesaid, into this court.

"4. It is further ordered that the said assets of the said estate shall remain under the control of this court until the final settlement of the said estate, and that any other or further assets of said estate that may be discovered shall be paid over to this court."

On February 25, 1885, the said Edwin A. McIntire presented a communication in writing to the said arbitrators agreeing and requesting them to return an award against him showing that he had received the said sum of $10,000 April 18, 1884.

He presented therewith the several receipts of Emma T., Martha, and Adaline McIntire, and Elizabeth Test, for the

sum of $2,500 each, on account of their shares in the estate. The arbitrators made a formal report, declaring that Edwin A. McIntire, as administrator of David McIntire, on April 18, 1884, received the sum of $10,000 in addition to the stocks, bonds and cash returned by him; and that he ought to account as administrator for the said sum in accordance with the order of reference aforesaid. This report of final award was, by order duly entered with the consent of all the parties, confirmed April 25, 1885.

In June, 1885, Charles McIntire, brother of the testator, filed a petition to set aside the order probating the will, and for issues to be transmitted to the circuit court for trial by jury. After considerable delay, these issues were tried and resulted in a judgment sustaining the will. This was appealed first to the General Term and thence to the Supreme Court of the United States, where it was affirmed April 13, 1896. See *McIntire* v. *McIntire*, 162 U. S. 383.

Whilst the cash and securities of the estate remained in the possession of the register of wills in accordance with the order before referred to, and on March 5, 1886, the court ordered the register to pay S. S. Henkle the sum of $500, to be charged to the distributive shares of Edwin A. McIntire and his sisters aforesaid. The petition for this order was signed by each of them and represented that they had employed General Henkle as their counsel to represent them in sustaining said will.

On August 13, 1886, by consent of all parties, an order was made directing the register of wills to deliver all of the cash and securities of the estate to the solicitors of the parties respectively—S. S. Henkle and James M. Johnston—to be held by them, subject to the order of the court until the final settlement of all litigation.

On December 2, 1892, James M. Johnston by consent retired and Calderon Carlisle was appointed to succeed him.

On July 22, 1893, upon a petition of Edwin A., Sarah, Martha and Emma T. McIntire, and Elizabeth Test, repre-

senting that S. S. Henkle had been retained by them to defend the will in the contest begun by Chas. McIntire, senior, an order was entered requiring the custodians of the funds of the estate to pay to said S. S. Henkle the sum of $5,000 on account of counsel fees in said litigation.

This order recited that the said sum "be charged against the interest of the said Edwin A., Sarah, Martha, and Emma T. McIntire, and Elizabeth Test, in said estate, without prejudice, however, to the right of the said named legatees or the administrator *c. t. a.* to apply to this court at the termination of the litigation touching the validity of the will of the said David McIntire, to have said allowance charged against the estate of the said testator."

S. S. Henkle dying on May 21, 1895, was succeeded by Enoch Totten, by order duly made July 3, 1895.

On application similar to those made on behalf of S. S. Henkle, orders were made for the payment to Enoch Totten of fees on the same account as follows: July 12, 1895, $500; January 28, 1896, $1,000; and on June 1, 1896, $5,000. The orders for these payments followed the form above quoted in the order to pay $5,000 to S. S. Henkle.

On July 26, 1896, Carlisle and Totten returned into court a complete account of their administration, in which the foregoing disbursements on account of fees, and others on account of costs, were credited. This was passed by the court by order duly entered, and they were allowed a commission of 5 per cent. on the cash coming into their hands and 5 per cent. on the cash value of the stocks and securities held by them. During their administration they had made certain investments of the cash received as dividends upon the stocks and securities, by direction of the court.

On July 7, 1897, Edwin A. McIntire upon leave granted by the court, gave a new bond as administrator in the sum of $100,000, and the assets of the estate were ordered to be delivered to him.

On August 2, 1897, the said administrator filed his final

account and scheme for distribution of the estate among the legatees, to which exceptions were filed by the appellant.

All of the exceptions were overruled and the account approved and distribution ordered; and from that order this appeal has been prosecuted. By agreement a partial distribution was had, leaving, however, funds sufficient to meet any change that might be made in the event the exceptions should be sustained on appeal.

*Mr. Calderon Carlisle* and *Mr. William G. Johnson* for the appellant:

1. The second exception is founded upon the failure of the appellee to charge himself with interest upon $10,000 belonging to the estate and received by him on April 18, 1884. It was distinctly provided by the decree of February 19, 1885, that he should be charged with interest from the time he received the money. He fixed that date himself as April 18, 1884. The money was never restored to the estate and though the other cash was invested and increased during the litigation, this sum has always, even to the present time, remained out of the control of the court. In overruling the second exception the court set aside this very important provision of the consent decree of February 19, 1885, and of the award thereunder. This the court had no power to do. That decree was the settlement, upon agreed terms, of a very grave and important controversy with the appellee, and all the other parties to it have been, ever since and still are, held and bound thereby.

2. In the absence of express statutory authority, the orphans' court has no power to allow counsel fees, and no case can be found allowing such fees unless the office of executor or of administrator or the possession of the estate was involved in the litigation. It is conclusively established by the record in this case that none of the services for which counsel fees were paid were for the benefit of the administrator, as such, or of the estate, but the counsel were employed by the five legatees for the protection of their

personal interests, as such.  Moreover, no application was ever made to the court to change its previous orders charging these counsel fees upon the shares of the parties whom the counsel represented, and no showing was made by them why such change should be made, nor was any opportunity given the appellant, one of the residuary legatees, to contest such a claim.

3. The fourth exception is to the claim of the appellee to be allowed $4,793.71 commissions as administrator.  Because of his dishonesty the court was obliged to take the assets out of his hands and itself assume control of them. Upon his own application, the assets were committed to the care of the counsel in the cause, who were paid, out of the fund, for the services which an honest administrator would have been trusted and required to perform.  His merely nominal retention in office was under a decree adjudicating that he should receive no compensation, a perfectly just stipulation under the circumstances.  This decree was *res judicata*, and the court was without power to disturb any of its provisions without the consent of all parties, especially after it had been acted upon by the other parties thereto who had given to it their faithful observance and submission for more than twelve years.

4. In the settlement of accounts the orphans' court has no jurisdiction over the distribution of the estate except in the case of intestate property passing to the next of kin under the Statute of Distribution.  In assuming to construe the terms of David McIntire's will it exceeded its power and jurisdiction, and its judgment in that regard should be reversed.  *Schull* v. *Murray,* 32 Md. 9; *Michael* v. *Baker,* 12 Md. 158.  In *State* v. *Warren,* 28 Md. 338, it was held that the orphans' court had no jurisdiction to determine the validity or invalidity of a bequest.  The same rule was declared by this court in the case of *The Vestry* v. *Bostwick,* 8 App. D. C. 452.

In passing upon the account the court should have limited itself to determining the proper charges and credits and

to the ascertainment of the correct balance for distribution, leaving to the administrator or to the parties the right to apply to the proper court, by appropriate proceedings, for the construction of the will and the ascertainment of the rights of the several legatees thereunder.

5. The court not only erred in assuming jurisdiction to construe the will, in the proceedings relating to the passing of an account, but it was also in error in the interpretation given to the language of the will.

In the light of surrounding circumstances the inference is irresistible that the purpose and intent of the testator was the equitable principle of equality. To the children of one brother he gives an amount within one penny of the sum the other brother had received, with interest from that time till his own death, and divides the residue "equally" "between" the two brothers' children—each set being treated collectively as the representatives of their respective fathers. In *Fisher* v. *Skillman*, 3 C. E. Green, 229, the rules governing the interpretation and construction of wills where the object of the testator is equality among the beneficiaries are considered.

The true construction is that the children of Edwin collectively and not individually should receive the legacy of $1,350.64 with interest from July 1, 1854, amounting to $3,761.63, which places them upon an exact equality with Charles, who had received that sum, and of the residue each set of children should receive collectively, *per stirpes*, one half.

Even if the facts and circumstances surrounding the testator be disregarded and the words of the will alone be considered, the construction put upon the residuary clause can not be justified. The word "between," without something to qualify its ordinary meaning, must be taken in its proper sense as indicating a division between two and not among six. *Ihrie's Estate*, 162 Pa. St. 369; *Green's Estate*, 140 Pa. St. 253; *Young's Appeal*, 83 Pa. St. 59; *Stoutenburgh* v. *Moore*,

37 N. J. Eq. 63; *Haskell* v. *Sargent,* 113 Mass. 341; *Alder* v. *Beall,* 11 G. & J. 123. So, if the language be doubtful as to the proportion in which the parties are to take, the testator will be presumed to intend the statutory distribution if the language be not inapplicable. *Minter's Appeal,* 40 Pa. St. 111. Had the testator intended the residue to go to all his nephews and nieces in equal shares, *per capita,* it would have been very simple and natural to have bequeathed the residue to his nieces and nephews or to the children of his brothers without specifying how it was to be divided. They would then have taken *per capita. Walker* v. *Griffin,* 11 Wh. 375, 379.

*Mr. Wm. Henry Dennis* for the appellee:

1. A court does not charge a fiduciary with interest, unless he has unreasonably detained money or has used it or realized interest on it himself. *Wilson* v. *Wilson,* 3 G. & J. 20; *Handy* v. *State,* 7 H. & J. 42.

2. The allowance of counsel fees for defending the probate of the will was proper. *Compton* v. *Barnes,* 4 Gill, 55; *Townshend* v. *Brooke,* 9 Gill, 91; *Glass* v. *Ramsay,* 9 Gill, 457; *Dorsey* v. *Dorsey,* 10 Md. 471; *Gorton* v. *Perkins,* 63 Md. 589; *Carson* v. *Phelps,* 40 Md. 73; *Ex parte Young,* 8 Gill, 285.

3. The allowance of commissions is a matter peculiarly within the province of the orphans' court, which has a close-at-hand view of the administration of the estate; and so far as discretion is vested in that court, its exercise is not subject to appeal. *Wilson* v. *Wilson,* 3 G. & J. 201; *Parker* v. *Gwynn,* 4 Md. 423; *Sinnott* v. *Kenaday, ante,* p. 1.

In *Eversfield* v. *Eversfield,* 4 H. & J. 12, 13, even where an executrix had agreed to charge no commission, and the orphans' court had acted upon that agreement, yet when she afterward applied for her commission it was held that the court should grant it. The right to commissions is a valuable right, and can not be divested by an agreement without consideration or with a consideration that fails. So where

one executor claimed to have done all the work pertaining to his position, he was nevertheless directed to share his commission with his coexecutors. *Richardson* v. *Stanbury*, 4 H. & J. 275. So the allowance made for commissions to a collector was held to have no effect upon the commissions of an executor or administrator of the estate. *Wilson* v. *Wilson*, 3 G. & J. 20.

4. The sixth exception has reference to the distribution of the residue,—whether *per stirpes* or *per capita*. The meaning of the words used by the testator has been thoroughly established by Maryland decisions which supply the law for this District. The will says: "The remainder, if any, is to be equally divided between my brothers Edwin and Charles' children." In *Maddox* v. *State*, 4 H. & J. 539, the testator directed the residue of his estate to be equally divided between his brother Justinian and his brother George's children. The court held that the distribution was to be made *per capita*, Justinian getting only as much as each of George's children. See, also, *Benson* v. *Wright*, 4 Md. Ch. 278; *Brittain* v. *Carson*, 46 Md. 186; *Allender* v. *Keplinger*, 62 Md. 7, 14.

5. The sum of $2,500 receipted for by each of the nieces of testator ought not to be considered as paid to them on account of their legacies, but on account of their residuary shares. A creditor has a right to apply a payment, made without any stipulation of the debtor, to a non-interest-bearing debt, in preference to an interest-bearing debt. *Jones* v. *United States*, 7 How. 681. Still less ought the counsel fees paid out of the estate to be reckoned as payments on account of these legacies.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first exception to the account is on the failure of the administrator to charge himself with interest on the $10,000 found by the award to have come into his hands April 18, 1884. We are of opinion that this exception should have been sustained.

The administrator confessed the receipt of the money on that date, and the decree referring the matter to arbitration, to which he consented, expressly provided that interest should be charged from the date of receipt. These $10,000 were not paid into court with the remaining money of the estate, but, as we have seen, were represented as divided between the four sisters of the administrator on account of their shares in the estate under the will, according to their several receipts dated February 25, 1885. The arbitrators to whom these receipts were exhibited had nothing to do with the collection of the fund reported by them as due the estate. No order for its distribution was ever made and nothing entered of record that indicates an approval of the action of the administrator.

But as the validity of the will had not then been contested, and the distributees were all special and residuary legatees and entitled to far more than the amounts so paid them, there would seem to be no reason why the administrator should not be credited with the payments so made to them and as of that date. Notwithstanding the extraordinary proceedings through which, with his own express consent, he had been deprived of the actual custody and administration of the assets of the estate, as well as the insufficient bond that he had first given, he was still administrator of the estate in name by the recognition of the court. He should therefore be charged with interest on the said $10,000 from April 18, 1884, to February 25, 1885, at the legal rate of 6 per cent. per annum.

The four legatees who received equal shares of the $10,000, according to their receipts, should be charged with the same, as of that date, as credits upon their respective legacies; but not as residuary legatees as has been contended on their behalf. That would be unjust to the remaining residuary legatees. The special legacies to these four persons, and their brother, the administrator, bear interest after one year from the death of the testator, and it is

right that those who received the payments should have
them charged to that account.   In the absence of any order
for the distribution of the fund in any other way the pre-.
sumption ought to be that it was on account of the interest-
bearing legacies which are the first charge upon the estate
in the hands of the administrator.

In restating the account the said payments will be cred-
ited upon the special legacies of the payees as of the date of
receipt; and, the interest due by the administrator upon the
said $10,000 will be charged against his special legacy also,
as of the same date.

2. The second exception relates to the attorneys' fees that
were paid out of the funds of the estate, to Messrs. Henkle
and Totten, in obedience to the orders hereinabove men-
tioned.   No doubt, as contended on behalf of the appellant,
the regular order of proceeding therein should have been
an application filed, under the leave given in the last four
of said orders, to charge the said sums against the estate.

No such application was made, and the administrator be-
gan his account with the assets of the estate as turned over
to him by the quasi-receivers when relieved of their trust.

Thereby, without change in the orders charging those dis-
bursements to the special legatees, they were transferred to
the estate.   Considering, however, the want of technical
formality that must, from their nature, naturally prevail in
such proceedings in the Orphans' Court, together with the
fact that opportunity was given to present exceptions to the
account, on that ground as well as others, the final order ap-
proving the account and ordering distribution should be
regarded as amending or vacating the former orders.

There can be doubt under the Probate Act of 1798, that,
after a will has been admitted to probate, it is the duty of
the executor to appear to a caveat filed against it, and make
defense on behalf of those interested in the will; and, nec-
essarily, he is entitled to a reasonable allowance for attor-
neys' charges incurred therein.   Act of 1798, Ch. 101, Subch·

10, Sec. 2; *Compton* v. *Barnes,* 4 Gill, 55; *Glass* v. *Ramsey,* 9 Gill, 456; *Townshend* v. *Brock,* 9 Gill, 90, 92; *Gorton* v. *Perkins,* 63 Md. 589, 590.

We can see no reason why the same rule should not be made to apply in this case, to the administrator with the will annexed. He was appointed to execute the will because the testator neglected to name an executor. All the duties of an executor devolved upon him in the administration of the estate under the will. The interests of all the parties to the controversy, as legatees, depended upon the final establishment of the will, and it became the duty of the administrator to defend it when assailed. There is nothing in the record to show that the fees charged against the estate were excessive or unreasonable, and hence the court did not err in overruling the exceptions in respect of the second payment to S. S. Henkle and the three payments to Enoch Totten on account of their services in the contest of the will.

The first payment to S. S. Henkle of $500, made March 6, 1886, appears in a different light. This money was ordered paid upon the petition of the special legatees, wherein they recited their special interests under the will and in the contest of the same, and that they had retained S. S. Henkle "who for some months past has been managing their interests."

The order directed the payment to be made and charged to the distributive shares of the petitioners. There was no leave given in the order to move subsequently to have the payment charged to the estate. This item seems to have been overlooked in the settlement of the account. It is not included in the account of the special custodians of the fund, because the disbursement was made from the funds in the registry of the court before their appointment. In restating the account this item should be brought in and charged to the said special legatees as provided in the order for its payment.

3. The third exception is taken to the commissions claimed

by, and allowed to, the administrator in settling his final account. These it is conceded amount to more than 5 per cent. of the cash value of the assets of the estate. Under any view of the question the allowance of more than 5 per cent. was error.

The statute limits the commissions that may be allowed an administrator to 10 per cent. Now, as a commission of 5 per cent. has been allowed and paid to the quasi-receivers, that amount must be reckoned in any allowance subsequently made to the administrator. It is not to be treated as an independent allowance to regularly appointed collectors of the estate, as was the case in *Wilson* v. *Wilson*, 3 G. & J. 20. Grant that there was no authority of law for surrendering the assets of the estate to those receivers for administration, but as the administrator consented thereto, and to the allowance made to them for the performance of his duties, he can not now deny that the commission was paid to them as his representatives, in the course of the administration of the estate.

Under ordinary circumstances, the allowance of commissions to an administrator, within the statutory limits, is a matter of discretion with the orphans' court, the exercise of which will not be reviewed. *Sinnott* v. *Kenaday, ante,* p. 1; *Nichols* v. *Hodges,* 1 Pet. 562.

There are special circumstances in this case, however, sufficient to create an exception to the foregoing rule. At the very beginning of his administration, as we have seen, the administrator, by his own consent, was shorn of all actual responsibility for the collection and preservation of the estate. It is true that he was allowed by the same order to continue "to act as administrator;" but upon the express condition that this should be "without allowance for commission or other charge for his services as such administrator." It is contended, on behalf of the administrator, that a contract or agreement of an administrator to act without charge for his services is without consideration as well as

against public policy, and therefore not enforceable.   Apparently the consideration in this case was the empty title of administrator that was permitted to be retained through this extraordinary proceeding.

Having expressly agreed to relinquish all claim to commissions as the price of this equivocal recognition, we think that he ought not now to be allowed to deny the obligation of that relinquishment.   The cases cited on behalf of the administrator do not support his contention.   *Eversfield* v. *Eversfield,* 4 H. & J. 12; *Richardson* v. *Stansbury,* 4 H. & J. 275.   Doubtless there may be circumstances under which a declaration that no commissions would be demanded by an administrator, would not be regarded as binding; but they do not exist in this case.   In *Eversfield* v. *Eversfield, supra,* there was no agreement that commissions would not be demanded.   At the time of procuring certain allowances for expenses, the executrix stated that she would not make a claim for commissions; but no such condition was imposed in the order therefor, and it was held that she was not bound by the declaration.   In *Richardson* v. *Stansbury, supra,* there were two executors, but one of them had the entire management of the estate.   He refused to divide the commissions allowed by the court with his coexecutor, who thereupon sued him, and was permitted to recover his portion.   In commenting upon that case it was afterwards said, that had there been an agreement between the executors that one might retain the commissions in consideration of his exclusive management of the estate, it would have been upheld.   *Brown* v. *Stewart,* 4 Md. Ch. 368, 371.   See, also, *McKim* v. *Duncan,* 4 Gill, 85.

Again, all that remained to be done when the assets were redelivered to the administrator, was to settle the final account and procure an order of distribution.   The litigation over the will had ended in its establishment.   The labor and responsibility of administration were practically ended. And it is apparent that the full recognition of the adminis-

14 Ct. App.—24

trator was for the purpose of closing the administration by distribution.

4. Three of the special exceptions have been argued together, as they relate to the construction of the will in making the distribution of the estate among the special and residuary legatees.

(1) The first point made is that the orphans' court has no jurisdiction beyond the probate of a will and the distribution of the estate when no construction of the will is required therefor. As the will in this case requires interpretation, in order to determine the respective interests of the legatees which are in dispute, the contention is that resort must be had to a court of equity. In this view we can not concur. Undoubtedly the orphans' court has but a limited jurisdiction in matters of probate and administration, and is not a court of construction. But it is expressly vested with jurisdiction "for the purpose of　.　.　.　directing the conduct and settling the accounts of executors and administrators, securing the rights of legatees, superintending the distribution of the estates of intestates, securing the rights of orphans and legatees, and administering justice in all matters relating to the affairs of deceased persons according to law." Chap. 101, Subch. 15, Sec. 1. Other sections provide for calling together distributees and legatees, and section 12 provides: "The orphans' court shall have full power, authority and jurisdiction to examine, hear, and decree upon all accounts, claims, and demands, existing between wards and their guardians, and between legatees, or persons entitled to any distributable part of an intestate's estate, and executors and administrators, and may enforce obedience to, and execution of their decrees in the same ample manner as a court of chancery may."

The power to make settlements, secure legatees and order distribution of the estate must include, by necessary implication, the power to construe the provisions of the will in so

doing. *McLane* v. *Cropper*, 5 App. D. C. 276, 292; *Sinnott* v. *Kenaday*, 12 App. D. C. 115, 121, and cases cited.

Whether an order so made may be subsequently reviewed by a proceeding in a court of general jurisdiction, is a question that we are not now called upon to decide.

(2) In construing the clause of the will giving to the children of the testator's brother Edwin the sum of $1,360.64, with interest calculated at 6 per cent. per annum from July 1, 1854, to the date of the testator's death, the court was clearly right. The terms of the will are plain and admit of no doubt. The bequest is to each of them and is a first charge upon the fund.

(3) It seems equally clear also that the court did not err in the construction of the residuary clause of the will. The provision that the residue of the estate "be equally divided between my brothers Edwin and Charles' children," can only be satisfied by a division *per capita*. The children of Edwin and Charles are not divided into classes, but made one. *Maddox* v. *State*, 4 H. & J. 539; *Brittain* v. *Carson*, 46 Md. 186. In the first of those cases the bequest was: "To be equally divided between my brother Justinian and my brother George's children." In the second it read: "Shall be equally divided between my said daughter and the children of Virginia Carson." In both the distribution was ordered to be made *per capita*. See, also, *Benson* v. *Wright*, 4 Md. Ch. 278; *Allender* v. *Keplinger*, 62 Md. 7.

5. Under the next exception in order, it appears that whilst the assets were in the hands of the attorneys, an order was made authorizing a loan of $5,000 to Charles C. Duncanson. His note was taken for that sum with 6 per cent. interest payable semi-annually, and secured by a deed of trust. This note passed into the possession of the administrator with the other securities of the estate. In his final settlement he has failed to account for one or more instalments of interest accruing due prior to the order therefor. As there is nothing in the record by which it can be determined that

this interest had or could have been collected, it is sufficient to say that, in restating the account, the administrator should be charged with the several instalments of interest unless it be made to appear that they could not be collected by the use of reasonable diligence.

6. The last exception for consideration was taken to the omission of the administrator to charge himself with interest upon the sum of $1,419.73, shown by the account to have come into his hands on or before February 27, 1891.

It appears that the administrator received from the Pennsylvania Railway Company in July, 1889, certain stock therein that had been issued as a dividend upon stock held by the testator. The money aforesaid consisted of cash dividends collected upon that stock. Neither this additional stock nor the cash dividends collected thereon had been delivered by him to the then custodians of the estate as required by the order. Had this money been turned over to them it might have been invested along with other funds under the direction of the court. It remained, however, in the possession of the administrator and subject to his private use, for there is nothing to show its use, or reservation for the probable needs of the estate.

If it be not shown that the money was used or kept for the necessary benefit of the estate, the administrator should be charged with interest upon it; or it may be applied as a credit upon his special legacy as of the date of its receipt by him.

For the reasons given, the order appealed from will be reversed, with costs to be charged to the estate, and the cause remanded for further proceedings in settlement of the account and final distribution, not inconsistent with this decision. It is so ordered. *Reversed.*